474 F.Supp. 788 (1979)
In re W. T. GRANT COMPANY, Bankrupt.
Charles G. RODMAN, as Trustee of the Estate of W. T. Grant Company, Bankrupt, and Morgan Guaranty Trust Company of New York, Appellants,
v.
Alton RINIER, as agent for certain employees of Bankrupt, Answering Employees of Bankrupt, Local 807-IBT, Retail Clerks International Association, National Labor Relations Board, Appellees.
No. 75 B 1735 (KTD).
United States District Court, S. D. New York.
July 18, 1979.
*789 Weil, Gotshal & Manges, New York City, for Charles G. Rodman, as Trustee of the Estate of W. T. Grant Company, Bankrupt; Harvey R. Miller, Richard P. Krasnow, New York City, of counsel.
Davis, Polk & Wardwell, New York City, for Morgan Guaranty Trust Company of New York; Philip C. Potter, Jr., Ogden N. Lewis, New York City, of counsel.
Tashlik & Salomon, New York City, for Alton L. Rinier as Common Agent for certain employees of Bankrupt; Chester B. Salomon, New York City, of counsel.
Natanson, Reich & Barrison, New York City, for answering employees; George Natanson, Earl Barrison, New York City, of counsel.
Vladeck, Elias, Vladeck, Zimny & Engelhard, P. C., New York City, for RCIA; Sheldon Engelhard, New York City, of counsel.
William Wachter, Deputy Asst. Gen. Counsel, Washington, D. C., for N. L. R. B.; Michael D. Stein, Kathy L. Krieger, Washington, D. C., of counsel.

*790 OPINION
KEVIN THOMAS DUFFY, District Judge:
This is an appeal from an order of the Honorable John J. Galgay, Bankruptcy Judge, entered June 22, 1978, concerning the treatment and disposition of certain claims filed against the bankrupt estate of the W. T. Grant Company [hereinafter referred to as "Grant"]. In particular, the order addresses the claims of former Grant employees who qualified for severance benefits and who continued to work for Grant during its unsuccessful attempt at an arrangement under Chapter XI of the Bankruptcy Act [hereinafter sometimes referred to as the "Act"]. Judge Galgay directed that these claims be treated as a cost and expense of the unsuccessful Chapter XI proceeding and, pursuant to Section 64(a)(1) of the Act, entitled to full payment as a first priority. The appellants, Charles G. Rodman as Trustee of Grant's estate [hereinafter referred as the "Trustee"], and Morgan Guaranty Trust Company of New York on behalf of itself and as agent for other bank claimants, object to this priority treatment and have filed the instant appeal.
On October 2, 1975, Grant filed a petition for an arrangement under Chapter XI of the Act. Thereafter, by order of the Bankruptcy Court dated April 13, 1976, Grant was adjudicated a bankrupt.
Prior to the Chapter XI proceeding Grant was the operator and manager of over 1,000 retail outlets. In order to induce individuals to accept employment with Grant, it offered potential employees a wage and compensation package which included the receipt of severance pay benefits. The severance pay benefit plans for Grant employees are set forth in the Grant Store Manual, New York Office Supervisor's Personnel Manual, District Manager's Guide to Termination Policy and Procedure and approximately 53 Collective Bargaining Agreements between Grant and various union representatives. See Trustee's Exhibits 1A, 3, 7 and 12A; Retail Clerks International Association's [hereinafter referred to as "RCIA"] Exhibit A. Despite minor variations the agreements generally provide that a worker who meets a minimum "length of service" requirement (generally one year) is, upon termination, entitled to a severance payment. The precise amount of the payment is determined by the number of years the worker was employed by Grant and his weekly salary at the date of termination. For example, under the typical plan a worker employed for two years would receive one week's pay whereas an employee with five years of service would receive two weeks' pay.
Upon the filing of its petition on October 2, 1975, Grant, pursuant to Section 342 of the Act, became a debtor-in-possession and was expressly authorized to operate and manage its retail outlets. Thereafter, during the unsuccessful Chapter XI proceeding, many of Grant's retail outlets were liquidated and its employees terminated. Finally, in April 1976, Grant was adjudicated a bankrupt and its remaining retail outlets were liquidated and the balance of its work force terminated. As a result, approximately 32,000 employees who were employed during the aborted Chapter XI proceeding and were eventually terminated have filed claims for severance pay benefits. It has been estimated that these claims when finally computed will be in excess of 11 million dollars.
Section 64 of the Bankruptcy Act dictates that certain debts of a bankrupt shall have priority over other debts. It provides:
The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration . . . (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding . . ..
The Trustee, in his application for instructions as to the treatment and disposition of claims filed against the bankrupt estate, characterized the claims for severance pay as part of the wages earned by *791 Grant employees.[1] He recommended, therefore, that each severance claim be divided into three categories and paid accordingly. First, that portion of an employee's severance claim which accrued subsequent to the filing of the Chapter XI petition would be fully paid as an expense of administration under Section 64(a)(1) of the Act. Second, that portion of an employee's severance claim which accrued during the three months prior to the filing of the Chapter XI petition, not exceeding $600, would be paid as a secondary priority claim under Section 64(a)(2). The balance of the claim would be treated as a pre-Chapter XI non-priority unsecured wage claim.
The claimants,[2] however, argue that severance pay benefits are not akin to wages but rather are a form of compensation for the termination of the employment relationship. They urge that a claim for severance pay does not lend itself to the type of tortured division the Trustee would subject it to. They conclude, therefore, that those employees who continued to work for Grant during the unsuccessful Chapter XI proceeding are entitled to have their entire severance claim treated as a cost and expense of administration.
Judge Galgay adopted the claimants' reasoning. He found that despite contrary authority in other Circuits, under the clear pronouncements of the Second Circuit severance pay is not earned from day to day and unlike wages does not accrue. Accordingly, he found that the severance claims for those individuals who continued to work for Grant during the Chapter XI proceeding were not divisible as suggested by the Trustee and were fully payable as a cost and expense of administration. In addition, Judge Galgay found that although Grant, as debtor-in-possession, had the power to reject the severance provisions as executory contracts, it failed to formally do so and consequently the severance provisions survived the Chapter XI proceeding.
There can be no doubt that in this Circuit severance pay benefits guaranteed under a collective bargaining agreement are not to be construed as wages. Indeed, in Straus-Duparquet, Inc. v. Local Union No. 3 International Brotherhood of Electrical Workers, 386 F.2d 649 (2d Cir. 1967) this Circuit defined severance benefits as
a form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal.
Id. at 651. The Court went on to hold that "[s]everance pay is not earned from day to day and does not `accrue' so that a proportionate part is payable under any circumstances." Id. The Court concluded that since severance pay is a form of compensation for termination of the employer-employee relationship, where the termination is an incident of the administration of a bankrupt's estate, the payments are entitled to a priority as an expense of administration. Id. See also In re Unishops, Inc., 553 F.2d 305, 308 n.1 (2d Cir. 1977). Thus, insofar as those employees were entitled to severance pay benefits pursuant to the several collective bargaining agreements involved herein, their severance claims are not divisible as suggested by the Trustee. *792 Consequently, absent a rejection of these executory agreements by the Trustee, these claims for severance pay are entitled to a priority.
The law, however, is somewhat less clear with respect to individual severance pay agreements. In the leading case, Unishops, supra, 553 F.2d 305, the Court was presented with a letter agreement between a corporation and one of its executive officers concerning severance pay benefits. After eleven years of service Unishops' Chief Operating Officer was promised by the corporation that upon termination he would be entitled to a $100,000 severance payment. Just eight months after the agreement, in November 1973, Unishops filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. Thereafter, Unishops continued to run its operation as a debtor-in-possession. The individual continued to act as Chief Operating Officer at Unishops until July 1974 when he was discharged.
The Court found that since the officer had continued in Unishops' employ for some time after it entered Chapter XI, and since the debtor-in-possession never rejected the executory severance agreement, Unishops received benefits under the contract and hence he was entitled to a priority under Section 64(a)(1) of the Act. The confusion arises, however, in a footnote to the Court's decision where it is stated that while those "cases involving severance pay under collective bargaining contracts, such as Straus-Duparquet, Inc. v. Local Union No. 3, supra, 386 F.2d 649 (2d Cir. 1967), correctly define severance pay as compensation for termination of employment and hence usually an expense of administration, . . . they are not determinative of the issue before us." Unishops, supra, at 308 n.1 (emphasis supplied).
The Trustee urges that the above quoted language indicates that although severance benefits under a collective bargaining agreement are to be construed as compensation for termination, individual severance pay agreements are not to be so classified. I disagree.
A reading of the Unishops' decision indicates that the issue before the Court was not the classification of severance benefits as either wages or termination compensation, but rather whether the debtor-in-possession ever rejected the executory severance as authorized under the Bankruptcy Act. Consequently, the Straus-Duparquet doctrine was simply "not determinative" of the issue before the Unishops' Court. Nowhere did the Court indicate, as the Trustee suggests, that the Straus-Duparquet doctrine was somehow inapplicable. Moreover, there appears to be no sound reason why the doctrine should not apply with equal force to individual severance agreements. Indeed, the nature of severance benefits is not altered simply because entitlement to the benefits originates in an individual employment contract as opposed to a collective bargaining agreement. Suffice it to say that in the case at bar the individual severance agreements were in no sense intended to represent compensation for services rendered or to be rendered by Grant employees. In fact, the individual agreements were virtually identical to those contained in the collective bargaining agreements and could only be intended as compensation for termination. Accordingly, those severance claims arising out of individual employment agreements must stand on the same ground as those emanating from collective bargaining agreements.[3]
This determination, however, does not end our inquiry. It is clear that the Bankruptcy Act permits a debtor-in-possession to reject executory contracts. See, e. g., 11 U.S.C. §§ 713(1), 757(2) and Chapter XI rule 11-53, 415 U.S. 1036 (1974).[4]See also In re *793 Unishops, supra, 553 F.2d at 308. However, this Circuit has held that
[a] debtor in possession . . . may disaffirm or reject an executory agreement only in accordance with the statutory procedures. As stated in the leading treatise,
`The failure to assume affirmatively an executory contract does not result at any time in a rejection of the contract. Whether the debtor is in possession, or whether there is a receiver, or trustee, the contract can be rejected only by affirmative action under § 313(1) and Chapter XI Rule 11-53 or § 357(2). Unless so rejected, the contract continues in effect.'
Id. at 308 (emphasis added). Thus, the issue is whether Grant ever rejected the executory severance agreements while it acted as debtor-in-possession.
It is undisputed that Grant did not affirmatively reject the agreements in issue pursuant to the statutory provisions of the Bankruptcy Act. The Trustee argues, however, that a debtor-in-possession is a separate and distinct juridical entity from that of the pre-Chapter XI debtor and as such is not bound by the agreements of the debtor absent an affirmative assumption thereof. He concludes that since Grant made no such affirmation of the severance agreements during the Chapter XI proceeding, it is not bound by the agreements. Alternatively, the Trustee argues that Grant's conduct upon commencement of the Chapter XI proceeding was sufficient under the circumstances to reject the severance agreements. Finally, the Trustee urges that should the severance claims be deemed as a cost and expense of administration, the amount of each claim must be limited to the actual value of the benefits conferred upon the debtor-in-possession during the Chapter XI proceeding. I find these arguments to be inapposite.
There is no doubt that a debtor-in-possession is deemed to be an entity separate and distinct from the debtor. See, e. g., Truck Drivers Local No. 807 v. Bohack Corp., 541 F.2d 312 (2d Cir. 1976); Brotherhood of Railway, etc. v. REA Express, Inc., 523 F.2d 164 (2d Cir.), cert. denied, 423 U.S. 1017, 1073, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975-76); Shopman's Local No. 455 etc. v. Kevin Steel Products, Inc., 519 F.2d 698 (2d Cir. 1975). It is equally settled, however, that a claim arising under an executory contract is entitled to a priority as a cost and expense of administration "if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it." Unishops, supra, 553 F.2d at 308 (emphasis added). Consequently, a formal assumption of the contract is unnecessary where the debtor-in-possession reaps the benefits of the contract during a Chapter XI proceeding.
In the instant action, Grant never formally assumed the executory contracts in issue. However, it did permit its employees, covered by the severance agreements, to continue in its employ after it entered Chapter XI. Hence, at the very least Grant received benefits under the executory contracts by virtue of securing the services of experienced Grant personnel during the Chapter XI proceeding. Apparently, had Grant been forced to terminate all its employees upon entering Chapter XI and thereafter recruit a new work force, even its short-lived Chapter XI attempt would have been virtually impossible. Accordingly, in light of these benefits the severance claims of the employees were entitled to a priority as a cost and expense of administration. Unishops, supra, 553 F.2d at 308. This is true despite Grant's "good faith attempt to reject the executory contracts formally binding upon the debtor." See Judge Galgay's memorandum opinion at page 5. As Judge Galgay correctly held, only a formal and affirmative rejection pursuant *794 to Sections 313(1), 357(2) of the Bankruptcy Act was sufficient to disaffirm the contracts herein. Id. Suffice it to say that Grant's efforts, short of a formal rejection, were insufficient to cause a rejection of the severance agreements herein.[5]
I turn finally to consider whether the Grant employees are entitled to recover 100 percent of their severance awards as a cost and expense of administration. The Trustee argues that since these claims were given priority treatment solely because Grant received benefits under the severance agreements during the Chapter XI proceeding, Judge Galgay erred in permitting 100 percent of each claim to be given a priority. Relying upon American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119 (2d Cir. 1960), the Trustee urges that a severance claim should be given a priority only to the extent benefits were conferred upon Grant during the aborted Chapter XI proceeding. In other words, rather than treating the entire severance claim as computed under the agreement as a cost and expense of administration, only the "reasonable value" of the benefits conferred upon Grant should be granted priority status.
While apparently supporting the Trustee's position, I believe the Second Circuit has recently retreated from that portion of its decision in American Anthracite which limits the priority to the reasonable value of the benefits conferred. Indeed, in UniShops, supra, the Court held that an employee's severance claim was entitled to be treated, without limitation, as a cost and expense of administration solely because the debtor-in-possession had received the benefits of the employee's services during the Chapter XI proceeding. The Court, while citing American Anthracite, made no attempt to limit the claim to the value of the benefits conferred. Rather, the Court permitted the claimant to recover the full amount of severance pay guaranteed under the severance agreement as a cost and expense of administration. Unishops, supra, 553 F.2d at 308. I feel constrained by this later decision and accordingly affirm Judge Galgay's treatment of the severance claims.[6]
Accordingly, Judge Galgay's order is affirmed.
SO ORDERED.
NOTES
[1] It is important to note from the outset that at no time did an employee's right to severance pay vest prior to termination. Under the express terms of the several severance plans at bar, employees who voluntarily resigned or were terminated for cause were not entitled to severance payments. Consequently, the entitlement to severance pay was not finally determined until the day of termination.
[2] The claimants, appellees herein, consist of Alton L. Riner, as common agent on behalf of former Grant employees, Answering Employees of the Bankrupt, Local 807-IBT, Retail Clerks International Association and the National Labor Relations Board. The sole distinction among these claimants is that while some are governed by the severance provisions contained in the over 53 Collective Bargaining Agreements between Grant and Union representatives (Trustee's Exhibit 7; RCIA's Exhibit A), the remaining non-union employees are governed by the severance provisions contained in the various Grant Store Manuals (Trustee's Exhibits 1A, 3 and 12A).
[3] The Trustee also seeks to avoid the Straus-Duparquet doctrine by arguing that it should be limited only to those cases in which a Chapter XI arrangement has been successful. I find this attempted limitation to be totally artificial and without merit.
[4] Section 313 of the Act provides:

Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties conferred and imposed upon it by this chapter
(1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate; Section 357 of the Act goes on to provide: An arrangement within the meaning of this chapter may include
(1) provisions for treatment of unsecured debts on a parity one with the other, or for the division of such debts into classes and the treatment thereof in different ways or upon different terms;
[5] See also In re Alfar Dairy, Inc., 458 F.2d 1258 (5th Cir.), cert. denied, 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972). In Alfar the Court held that the Bankruptcy Act does not permit a "tacit" rejection of an executory contract. Id. at 1260. Consequently, "even though a party to an executory contract . . . may know by one means or another that the bankrupt does not intend to perform, the contract is not voided as a result of this knowledge but remains in force until rejected pursuant to the Act." Id. at 1261.
[6] This result fully comports with this Circuit's decision in Straus-Duparquet holding that since severance pay is a form of compensation for termination of the employment relation rather than something that is earned from day to day, it is not capable of apportionment and the full severance award is payable upon termination. 386 F.2d at 651.