**In re JAMESWAY CORPORATION, Debtor.**

**Bankruptcy No. 95–B–44821.**

United States Bankruptcy Court, S.D. New York.

Sept. 6, 1996.

Lester M. Kirshenbaum, Cherise Wolas Kasica, Craig B. Cooper, Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City, for Jamesway Corp., et al.

Risa M. Rosenberg, Bachner, Tally, Polevoy & Misher, L.L.P., New York City, for Massachusetts Mutual Life Ins. Co.

Andrew M. Kramer, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Tri–State Mall and Monticello Mall.

Paul Traub, Maura I. Russell, Traub, Bonacquist & Fox, L.L.P., New York City, for Official Committee of Unsecured Creditors.

*MEMORANDUM DECISION ON MOTION OF HERBERT DOUGLAS FOR SUMMARY JUDGMENT DIRECTING PAYMENT OF SEVERANCE COMPENSATION AS AN ADMINISTRATIVE EXPENSE UNDER § 503(b) OF THE BANKRUPTCY CODE*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

This is Jamesway Corp.'s ("Jamesway" or "debtor") second case ("Jamesway II") under chapter 11 of the Bankruptcy Code. Its first case ("Jamesway I") resulted in a confirmed chapter 11 plan of reorganization (the "Jamesway I Plan"). Herbert Douglas ("Douglas") is Jamesway's former President and Chief Executive Officer. Jamesway employed him pursuant to a postpetition agreement effective September 1, 1994 (the "Agreement") that it treated as an executory contract and assumed under the Jamesway I Plan. Jamesway terminated the Agreement without cause postpetition in Jamesway II. Douglas has filed a proof of claim (the "Claim") seeking payment of $1 million as an administrative priority expense under § 503(b)(1)(A) of the Bankruptcy Code. The Claim is for monies characterized by Douglas as severance pay and that are payable under ¶ 6(b) of the Agreement. Douglas seeks summary judgment pursuant to Bankruptcy Rule 7056(c) and Local Bankruptcy Rule ("LBR") 7056–1 allowing the Claim in full and directing debtor to pay it. Debtor agrees that the Claim is payable as a postpetition severance pay claim. The Official Committee of Unsecured Creditors (the "Jamesway II Committee" or "Committee") disputes that the Claim is a severance pay claim and opposes the motion. We deny the motion.

*Facts*

At all relevant times Jamesway was engaged in the operation of discount department stores under the "Jamesway" name. On or about July 19, 1993, debtor commenced Jamesway I by filing a chapter 11 petition for reorganization in this district. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, Jamesway was a debtor in possession until December 12, 1994, when it confirmed the Jamesway I Plan. On or about July 23, 1993, the United States Trustee for the Southern District of New York appointed a statutory committee of unsecured creditors (the "Jamesway I Committee").

As of the commencement of Jamesway I, Joseph R. Ettore served as Jamesway's President and Chief Executive Officer. Ettore resigned postpetition and by order dated August 30, 1994, Jamesway retained Douglas pursuant to the Agreement as Ettore's successor. Jamesway I's Board of Directors and the Jamesway I Committee sanctioned the Agreement before Jamesway submitted it for court approval.

Under the Agreement, the initial employment term is from September 1, 1994 to

August 31, 1997 (the "Employment Term"), and the annual base compensation is $500,000 ("Base Salary"). Agreement ¶¶ 1(a), (f) and 3(a). The Agreement calls for a one-time cash payment of $319,000, *see* Agreement ¶ 3(b), and enables Douglas "to participate in any bonus, incentive compensation, stock option or stock related right, retirement, profit sharing, medical payment, disability, health or life insurance and other benefit plans and arrangements which may be or become available to the senior executives of [Jamesway] in general, provided, that [Douglas] shall be required to comply with the conditions attendant to coverage by such plans and arrangements and shall comply with, and be entitled to benefits only in accordance with, the terms and conditions of such plans and arrangements." Agreement ¶ 3(c). It provides that at Jamesway's option, and upon Douglas' consent, Jamesway may extend the Employment Term for one or more one-year periods (as extended, the "Extended Employment Term"), provided Jamesway conveys such offer (the "Extension Offer") to Douglas by 90 days before the expiration of the relevant employment term, and the Extension Offer remains irrevocable for the 30–day period immediately following delivery of that offer. *See* Agreement ¶¶ 1(b) and (c). If Jamesway fails to make a timely Extension Offer during the Employment Term or an Extended Employment Term, and thereafter the Employment Term or Extended Employment Term expires,

> then, in such event, [Jamesway] shall pay to [Douglas] a severance amount equal to the Base Salary prevailing in the year in which the Employment Term or Extended Employment Term expires. Such severance payment shall be made no later than 10 days after the expiration of such Employment Term or Extended Employment Term.

Agreement ¶ 1(d). If Douglas rejects a timely Extension Offer and thereafter his Employment Term or Extended Employment Term expires, he is not entitled to the payment described above, but can recover compensation, including bonuses, due as of the date his contract expires. *See* Agreement ¶ 1(e).

Paragraph 6 of the Agreement governs the termination of the Agreement and specifies the parties' rights upon such event. Under ¶ 6(a) Jamesway may terminate the Agreement for the "cause" specified therein, without liability, other than for payment of unpaid compensation accrued through the date the Employment Term ends. Paragraph 6(b) authorizes Jamesway to terminate the Agreement at any time without cause, while paragraph 6(c) authorizes Douglas to terminate the Agreement for "cause". Finally, under paragraph 6(d), the Agreement automatically terminates if Jamesway commences a case under chapter 7 of the Bankruptcy Code or if an involuntary chapter 7 case is commenced against Jamesway and remains undismissed for 30 days. *See* Agreement ¶ 6(d)(i).

Sixty days after the Agreement terminates under ¶¶ 6(b)–(d), Jamesway must pay to Douglas an amount equal to the greater of the Base Salary payable had he completed the Employment Term or Extended Employment Term and twice his existing Base Salary. *See* Agreement ¶¶ 6(b), (c) and (d). Additionally, under ¶ 6(d)(ii), Jamesway must use its best efforts to obtain a standby letter of credit in the face amount of $1 million as security for the payment under ¶ 6(d).

Douglas executed his duties as Jamesway's President and Chief Executive Officer, and as a member of its Board of Directors. By order dated December 12, 1994, we confirmed the Jamesway I Plan and that plan became effective on January 27, 1995. Section 8.5 of the Jamesway I Plan provides that Jamesway's officers serving immediately before the plan's effective date will be the initial officers of the reorganized debtor. In part, § 8.17 of the plan provides that all employment agreements are assumed executory contracts.

On or about October 18, 1995, Jamesway commenced this case by filing a chapter 11 petition for reorganization in this district. Although Jamesway is a debtor in possession under §§ 1107 and 1108 of the Bankruptcy Code, it is not operating and is liquidating its assets and properties. In or about December 1995, the Jamesway II Committee advised debtor and Douglas that in its view, Douglas' services were no longer necessary and recommended that debtor terminate the

Agreement. Jamesway II's Board of Directors then resolved to terminate Douglas' employment, without cause, pursuant to ¶ 6(b) of the Agreement, effective December 1, 1995. Douglas filed the Claim on April 15, 1996.

## Discussion

Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

■ Bankruptcy Rule 7056 makes Fed. R.Civ.P. 56 applicable to cases under the Bankruptcy Code. Fed.R.Civ.P. 56(c) states that summary judgment " 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' " *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Movant must show the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ Douglas contends that by virtue of debtor's postpetition termination of the Agreement, and pursuant to ¶ 6(b) thereof, debtor owes him $1 million—i.e., two years' Base Salary calculated as of his termination—and that those funds constitute severance pay compensable as a priority administrative expense pursuant to § 503(b)(1)(A)

of the Bankruptcy Code. Whether the monies due under ¶ 6(b) constitute severance pay is the only dispute reflected in the papers filed herein.

The parties agree that the operative definition of "severance pay" is

'a form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal.'

*Straus–Duparquet Inc., v. Local Union No. 3 (In re Straus–Duparquet, Inc.)*, 386 F.2d 649, 651 (2d Cir.1967) (*quoting Adams v. Jersey Central Power & Light Company*, 21 N.J. 8, 13–14, 120 A.2d 737, 740 (1956)). They also agree that by application of principles of *stare decisis*, we must apply the decisions of the Second Circuit Court of Appeals in Bankruptcy Act cases affording claims for severance pay asserted by employees terminated postpetition administrative priority status. *See In re Straus–Duparquet, Inc.*, 386 F.2d at 651; *In re W.T. Grant Co.*, 474 F.Supp. 788 (S.D.N.Y.1979), *aff'd*, 620 F.2d 319, 320–21 (2d Cir.), *cert. denied sub nom. Morgan Guaranty Trust Co. of N.Y. v. Rinier*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *Zelin v. Unishops, Inc. (In re Unishops, Inc.)*, 553 F.2d 305, 308 (2d Cir. 1977); *see also Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 104 (2d Cir.1986) (expressly declining to disavow *Straus–Duparquet*, but stating that "it appears to be the general rule that when severance pay ... represents compensation for the employee's past services it is not an administrative expense entitled to priority"). Thus, for the parties, "whether or not the key employee[ ] [Douglas] will have an administrative expense priority claim ... requires a determination that the compensation called for under the [Agreement] represents post-petition severance pay." *In re Child World, Inc.*, 147 B.R. 847, 852 (Bankr. S.D.N.Y.1992); *see also In re Hooker Investments, Inc.*, 145 B.R. 138, 147 (Bankr. S.D.N.Y.1993) (*"Hooker"*) ("Characterization of the payments due [Douglas] under the [Agreement] as severance is fundamental to

[Douglas'] theory of entitlement to [$1] million as an expense of administration").

Some Bankruptcy Code cases have questioned the applicability of *Straus–Duparquet* "when applied to high-powered, high-priced executives with individually negotiated contracts providing for substantial termination payments." *Hooker*, 145 B.R. at 150. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 711 (Bankr.S.D.N.Y.1992) ("A claim for two weeks' pay is different, not just in degree, but in kind, from a claim for multiple years' salary and bonus. The fact that a claim for the former was allowed [in *Straus–Duparquet* ] is no authority for allowing the latter"). In *dicta*, the *Hooker* court found that given the statutory changes introduced in the Bankruptcy Code and judicial rulings in and outside this circuit, the doctrine of *stare decisis* did not require the court to follow *Straus–Duparquet*, *Unishops* and *W.T. Grant* blindly. *See Hooker*, 145 B.R. at 145–47. However, in *In re Spectrum Information Technologies, Inc.*, 193 B.R. 400, 406 (Bankr.E.D.N.Y.1996), the court disagreed with *Hooker*, reading *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98 (2d Cir.1986), as proof that the holding in *Straus–Duparquet* "remains the law in the Second Circuit". *But see In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 776 (Bankr.S.D.N.Y.1996) (Brozman, C.J.) ("*Ralph Lauren* ") (after reviewing the *Hooker* and *Spectrum* opinions finding that the *Hooker* opinion is "more persuasive"). Because we find that the Claim is not based on severance pay, we do not consider whether *Straus–Duparquet* is applicable here.

■■■ We can construe a contract in a summary judgment motion, provided the contract is unambiguous and its words convey a definite and precise meaning. *Hooker*, 145 B.R. at 143 (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)). We must interpret the contract to implement the parties' intent as expressed in the unequivocal language they have used. *See Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 485 N.E.2d 974, 495 N.Y.S.2d 309 (1985), *rearg. denied*, 67 N.Y.2d 647, 490 N.E.2d 558, 499 N.Y.S.2d 1031 (1986). We have exclusive authority to decide whether language in a contract is ambiguous. *See Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 435 N.E.2d 1075, 1077, 450 N.Y.S.2d 460, 462

(1982). This dispute over the proper characterization of the monies payable under ¶ 6(b) does not render the Agreement ambiguous. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d at 428; *Hooker*, 145 B.R. at 143. The parties do not contend otherwise. Accordingly, the matter is ripe for summary judgment.

Severance pay policies protect employees from the economic hardship of joblessness, and reward them for past services to their employer. *Bradwell v. GAF Corporation*, 954 F.2d 798, 801 (2d Cir.1992) (citing *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 325 (2d Cir.1985), *aff'd sub nom. Roberts v. Burlington Industries, Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986)); *Hooker*, 145 B.R. at 149 (citing *Bradwell* ). Severance pay is "compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and . . . is therefor 'earned' when the employees are dismissed." *Trustees of Amalgamated Ins. Fund v. McFarlin's Inc.*, 789 F.2d at 104; *see also In re Golden Distributors, Ltd.*, 152 B.R. 35, 36 (S.D.N.Y. 1992) ("The severance pay for terminated employees . . . is a cost of carrying on business, and constitutes an administrative expense when the severance occurs post-petition. This is so, even if severance pay is calculated by formula according to an employee's length of employment, including service which was primarily pre-petition"). Typically, severance payments are fixed or readily ascertainable amounts which, if anything, increase with the length of service of an employee. *Compare In re Straus Duparquet, Inc.*, 386 F.2d at 650 (employee employed at least one year, but not more than three years, entitled to one week's severance pay, those employed more than three years entitled to two weeks' severance pay); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 952 (1st Cir.1976) (severance pay calculated as one week's pay for each year of employment); *In re W.T. Grant Co.*, 474 F.Supp. at 788 (amount of severance payment determined by length of employment and salary as of date of discharge).

Paragraph 1(d) of the Agreement speaks of "severance payments". Douglas and the Committee assume that a claim arising under ¶ 1(d) is entitled to administrative priority status. We need not test that assumption. Douglas argues that because ¶ 1(d) of the Agreement refers to ¶ 6, and because ¶¶ 1(d) and 6(b) provide for payments to him upon the termination of his employment with Jamesway, the monies payable under both should be viewed as severance pay entitled to administrative priority under § 503(b)(1)(A) of the Bankruptcy Code.

However, the monies payable under ¶ 6 are not labeled "severance pay" and they lack typical characteristics of severance pay. For example, the payments under ¶ 6(b) decrease during the first year of the Employment Term. *Compare Hooker*, 145 B.R. at 149–50 (factor in court's conclusion that monies were not severance pay was that size of payment was inversely related to length of employment). Douglas apparently concedes that the consideration for the payments under ¶ 6(b) is not his past service to debtor because during argument he urged that he earned those funds when he joined the debtor. *See* Transcript at 12–13 ("Once he was employed, Mr. Douglas became entitled to a $1 million severance under the formulation that is set forth in [¶ 6(b) of the Agreement]"); *id.* at 20 ("[The payment under ¶ 6(b) ] was the inducement to get Mr. Douglas to give up his benefits at [his former employer] and to come to Jamesway"). As such, those payments are not entitled to administrative expense priority. *See Hooker*, 145 B.R. at 149 (payment due employee not severance pay because consideration for payment was employee's original pre-petition commitment to term of employment with debtor); *In re Drexel Burnham Group, Inc.*, 138 B.R. at 712 (promised payments that induced claimant to accept prepetition employment with debtor not accorded administrative priority status because claimant failed to provide debtor consideration postpetition); *see also In re Child World, Inc.*, 147 B.R. at 853 (amounts payable under employment agreement upon termination not severance payment under Massachusetts law entitled to administrative expense priority under § 503(b)(1)(A) of the Bankruptcy Code where

payments induced employees to remain with company during financially troubled times).

Moreover, ¶ 6(b) does not protect Douglas from the economic hardship caused by joblessness. Rather, it is more closely akin to a liquidated provision giving rise to a general unsecured claim because it guarantees that upon debtor's breach of the Agreement Douglas will be paid at least 100% of the Base Salary due in the initial Employment Term under the Agreement. *See Hooker*, 145 B.R. at 147–49.

We conclude that the monies payable to Douglas under ¶ 6(b) of the Agreement do not constitute severance pay entitled to administrative priority under § 503(b) of the Bankruptcy Code.

In *Ralph Lauren*, the court estimated the value of debtor's former Chief Executive Officer's ("Kreisler") general unsecured claim for voting purposes under § 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). The claim was predicated on an employment agreement including, among other things, a severance pay agreement. In doing so, the court considered the value of Kreisler's administrative priority severance payment claim. It noted the dispute over the applicability of *Straus–Duparquet* to cases under the Bankruptcy Code, but did not directly address it, because "[w]hile the cases may disagree about whether contractual severance obligations are entitled to administrative priority, it is indisputable that a claimant is entitled to a *quantum meruit* recovery for benefit conferred postpetition." 197 B.R. at 776 (citing *Hooker*, 145 B.R. at 150). Relying on *Teamsters Local No. 310 v. Ingrum (Matter of Tucson Yellow Cab Co., Inc.)*, 789 F.2d 701 (9th Cir.1986), the court held that Kreisler's rejected severance agreement was a good benchmark of the value of his services. *Ralph Lauren*, 197 B.R. at 777. The court decided that most of Kreisler's claim likely would be an administrative priority claim and estimated his prepetition unsecured claim at $279,000. *Id.* at 779.

Chief Judge Brozman issued the *Ralph Lauren* decision from the bench at a hearing conducted on June 12, 1996. Douglas first

brought the decision to the attention of his adversary and the Court during the June 19, 1996 argument of this motion when he made a *quantum meruit* argument—not raised in his papers—as an alternate basis for according the Claim administrative priority status. He argued that his postpetition services benefitted Jamesway and, under *Ralph Lauren,* the appropriate benchmark for valuing those services is the alleged severance pay provision in ¶ 6(b) of the Agreement.

In support of this motion, Douglas submitted an affidavit doubling as his Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056–1 ("LBR 7056–1 Statement"). Although the Committee purports to contest portions of that statement, it failed to submit a counter statement pursuant to LBR 7056–1 or an affidavit. LBR 7056–1 derives from former Local Bankruptcy Rule 13(h) and provides:

> [p]apers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there is a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party shall be deemed admitted unless controverted by the statement required to be served by the opposing party.

LBR 7056–1. Douglas points to his unchallenged LBR 7056–1 Statement for proof of the substantial benefits he allegedly conferred on debtor postpetition. The Committee does not concede that *Ralph Lauren* is applicable and contends that Douglas' last minute introduction of a *quantum meruit* theory of recovery is unfair. It urges that unlike a determination of the proper characterization of the monies due under ¶ 6(b) that can be done from the four corners of the Agreement, or the applicability of *Straus–Duparquet* that is a matter of law, resolution of the *quantum meruit* argument mandates that we consider extrinsic evidence in evaluating and quantifying benefits, if any, conferred on the estate by Douglas. It contends that by waiting until the hearing to make that argument, Douglas effectively denied it an opportunity to make a factual record. The Committee also argues that counsel was

aware of the *Ralph Lauren* decision on the day Judge Brozman announced her ruling but waited a week before revealing it. Counsel denies any such gamesmanship, representing that he did not learn of the *Ralph Lauren* decision until June 16, 1996 and that as an officer of the court he believed it necessary and appropriate to bring the decision to our attention. In any event, the Committee requests an opportunity to make an evidentiary record on the *quantum meruit* issue if we consider it. Douglas objects to that request arguing that the Committee had sufficient time to contest his LBR 7056–1 Statement but failed to do so.

Douglas' attorney did not intend to disadvantage the Committee by his use of the *Ralph Lauren* decision. However, nothing in the moving papers signaled that Douglas is relying on a *quantum meruit* theory of recovery or that the nature, extent and/or quality of his postpetition services is relevant to the motion, because the papers focus solely on the characterization of the payment obligation under ¶ 6(b) and the applicability of *Straus–Duparquet.* Thus, we would be prepared to allow the Committee to supplement its response to address the legal and factual issues relevant to the *quantum meruit* argument. To that extent we reverse our determination during argument to close the record and bar the Committee from submitting evidence herein. *See, e.g.,* Transcript at 40, 43–44. However, given our determination that the monies due under ¶ 6(b) do not constitute "severance pay" entitled to administrative priority under the Bankruptcy Code, the *Ralph Lauren* argument is not germane to this case.

Certain members of the Jamesway I Committee are members of the Jamesway II Committee. During argument, Douglas contended that because the Jamesway I Committee was aware of the terms of the Agreement prior to its submission for court approval, the Jamesway II Committee cannot oppose payment of the Claim as an administrative priority expense. *See* Transcript at 20–21. We find no merit to that contention. Douglas failed to brief that argument, he cited no authority to support it, and we are not aware of any such authority.

Moreover, in authorizing Jamesway in Jamesway I to execute the Agreement, we were not asked to, and did not, consider whether ¶ 6(b) gives rise to a severance payment obligation allowable as an administrative priority expense. We merely held that Jamesway had proved that employing Douglas pursuant to the Agreement was in the best interests of the Jamesway I debtor and its estate.

The parties agree that employment agreements are executory contracts subject to assumption and rejection under § 365 of Bankruptcy Code. *See In re Jolly,* 574 F.2d 349, 351 (6th Cir.), *cert. denied sub nom. Still v. Chattanooga Memorial Park,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); *In re Uly–Pak; Inc.,* 128 B.R. 763 (Bankr. S.D.Ill.1991). Although the debtor terminated the Agreement postpetition, it has not rejected it. The Committee argues that pursuant to § 502(b)(7) of the Bankruptcy Code we should fix the Claim as a general unsecured claim equal to one year's Base Salary, or $500,000. However, the Committee merely opposed Douglas' summary judgment motion; it did not move for or otherwise seek affirmative relief against him. Accordingly, we deny that request, without prejudice.

### Conclusion

Based on the foregoing, we deny Douglas' motion.

SETTLE ORDER.