### In re CINCINNATI CORDAGE AND PAPER CO., Debtor.

#### No. 00–14200.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

June 21, 2001.

Philomena S. Ashdown, Stuart C. Brinn, Douglas L. Lutz, Cincinnati, OH, Jean R. Robertson, Cleveland, OH, for debtor.

Dale Baird, Atlanta, GA, E. Hanlin Bavely, Gregory G. Beck, Lawrence A. Bresko, Cincinnati, OH, Monica L. Clark, Dorsey and Whitney, LLP, Minneapolis, MN, Scott W. Dales, Grand Rapids, MI, Thomas H. Forrester, Nashville, TN, Thomas H. Gilpin, Huntington, WV, Douglas Gordon, Knoxville, TN, Robert E. Greenberg, Washington, DC, Lisa S. Gretchko, Detroit, MI, Jeffrey M. Hendricks, Charles P. Johansen, Cincinnati, OH, Jerold Hoover, Avon, IN, Mary L. Johnson, New York City, John J. Kelley, Jr., Cincinnati, OH, Sherri B. Lazear, Columbus, OH, Stephen D. Lerner, Cincinnati, OH, Jeffrey B. Loeb, Danvers, MA, Patrick E. Mears, Grand Rapids, MI, Mark S. Palmer, Pittsburgh, PA, Lee D. Powar, Cleveland, OH, Roy L. Prange, Jr., Madison, WI, Thomas B. Radom, Bloomfield Hills, MI, Jean R. Robertson, Cleveland, OH, W. Grant Scott, Pittsburgh, PA, Christopher J. Stroebel, Madison, WI, Charles J. Sullivan, Syracus, NY, Daniel R. Swetnam, Columbus, OH, Edward H. Tillinghast, III, New York City, Michael H. Traison, Detroit, MI, Ronald M. Tucker, Indianapolis, IN, Tracey N. Wise, Lexington, KY, for creditors.

David T. Graham, Cleveland, OH, for attorney.

Gina Baker Hantel, Nashville, TN, for Commissioner of Revenue.

Thomas A. LaBuda, Chicago, IL, Ira H. Thomsen, Springboro, OH, for interpleader.

Pricewaterhouse Coopers LLP, Chicago, IL, pro se.

## ORDER RE: APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on Lawrence A. Bresko and Charles P. Johansen's Application for Allowance and Payment of Administrative Expense Claims (Doc. 247), the Official Creditors' Committee's response (Doc. 259), and Bresko and Johansen's reply (Doc. 267). A hearing was held on May 29, 2001.

Bresko and Johansen seek administrative expense claim payments for certain severance benefits in the amounts of $450,000 and $405,000 respectively and for certain retirement benefits in the present value amounts of $62,869 and $69,111, respectively. The Committee contends that the claims are unsecured claims and not administrative expenses. The Committee also contends that the statutory cap of 11 U.S.C. § 502(b)(7) is applicable to the claims.

### I. Background

Bresko and Johansen were hired by the Debtor on August 27, 1997 and February 3, 1998, respectively, as salesmen. In hopes of saving the Debtor's failing business, Bresko and Johansen were later appointed president and vice-president of the Debtor with annual base salaries of $150,000 and $135,000, respectively. At the time of the April 1, 1999 promotions, Bresko and Johansen entered into employment contracts ("Executive Employment Agreements") with the Debtor.

Pursuant to paragraph 13(D) of the Executive Employment Agreements, each executive was entitled to receive an amount equal to three times his annual base salary if he was terminated for a reason other than death, terminating disability, or serious cause ("Severance Benefits"). Pursuant to paragraph 6(C), each executive was entitled to supplemental retirement benefits ("Retirement Benefits") as follows:

> If Executive's employment with the Employer continues for at least two (2) full years from date of hire, Executive shall be provided with supplemental retirement benefits of $30,000 per year, with payments to begin when Executive reaches age 62, for a term equal to the number of full years of Executive's employment with the Employer, up to a maximum of ten years (10) years.

The Debtor filed its chapter 11 petition on August 1, 2000. From the outset, the Debtor contemplated a liquidating plan.

On August 7, 2000, the Debtor filed its motion to implement post-petition retention and severance programs ("Retention Program" and "Severance Program," respectively) for its key employees, including Bresko and Johansen ("Key Employee Motion"). Under the post-petition Retention Program, each key employee would receive a cash bonus based upon his base salary and the sales proceeds of the Debtor's assets. Under the post-petition Severance Program, each key employee would receive a lump sum payment of at least six months salary upon the closing of the sale of substantially all of the Debtor's assets. The Key Employee Motion recited that the post-petition Retention and Severance Programs were to be "in addition to" all other pre-petition "severance or termination benefits."

In the September 18, 2000 order granting the Key Employee Motion ("Key Employee Order"), the Committee reserved its right to object to the assumption of the pre-petition Executive Employment Agreements and to the payment of benefits under Section 6 of the Executive Employment Agreements.

During the course of the liquidation of the Debtor's assets, Bresko and Johansen received their regular salaries, as well as payments totaling $87,000 and $78,750, respectively, under the post-petition Retention and Severance Programs.

Bresko and Johansen were terminated on February 28, 2001 and March 15, 2001, respectively.

## II. Applicable Law

Pursuant to 11 U.S.C. § 503(b)(1)(A), "after notice and hearing, there shall be allowed administrative expenses ... including ... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."

■ In the Sixth Circuit, for a claim to qualify as an administrative expense, the claimant must prove that the debt "arose from a transaction with the [debtor] as opposed to the preceding entity or, alternatively, that the claimant gave consideration to the [debtor]" and that the debt substantially benefitted the estate. *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976)). *See also In re Sunarhauserman, Inc.*, 126 F.3d 811, 816 (6th Cir.1997) (debt must have arose from transaction with bankruptcy estate).

■ Administrative expenses are given priority treatment to effect the policy of encouraging creditors and others to do business with debtors. *E.g., In re Commercial Financial Services, Inc.*, 246 F.3d 1291, 1293 (10th Cir.2001). Coexisting with this policy is the somewhat conflicting fundamental bankruptcy principle that creditors of the same class, i.e., general unsecured creditors, should be given the same treatment. *See In re White Motor Corp.*, 831 F.2d at 112. Thus, it is not possible to convert a pre-petition contract entered into with a debtor's preceding entity for which pre-petition consideration was given into an administrative expense claim. *See id.* at 109. *See also In re Commercial Financial Services, Inc.*, 246 F.3d at 1295 (mutual promises made entirely pre-petition is pre-petition consideration and cannot support claim for administrative expense claim).

### A. Severance Benefits

■ There is no question that Bresko and Johansen's services were beneficial to the orderly liquidation of the Debtor's assets. However, because the Severance Benefits arose from pre-petition Executive Employment Agreements, they do not qualify as administrative expense claims. *See In re White Motor Corp.*, 831 F.2d at 110; *In re Sunarhauserman*, 126 F.3d at 816. The fact that Bresko and Johansen were not terminated until sometime after the petition was filed is not determinative. *See In re Sunarhauserman*, 126 F.3d at 818 (courts look to "when the acts giving rise to liability took place, not when they accrued"). Indeed, the Severance Benefits were "earned" completely pre-petition in the sense that they could have been paid on the day after the pre-petition Executive Employment Agreements were signed.

This holding is consistent with the majority position that severance pay is not entitled to administrative expense status. *See In re Lykes Bros. Steamship*, 213 B.R. 401 (Bankr.M.D.Fla.1997) (citing cases from the Third, Ninth, and First Circuits).

We acknowledge the existence of a body of caselaw from the Second Circuit stemming from *In re Straus–Duparquet, Inc.*, wherein the Second Circuit granted administrative expense claim status to the severance pay claims of employees who were terminated post-petition. 386 F.2d 649 (2d Cir.1967) (one or two weeks pay depending on length of employment found to be ad-

ministrative expense claim). *In re Straus–Duparquet, Inc.,* is not binding on this Court and has been seriously questioned by bankruptcy courts in the Second Circuit. *See e.g., In re Jamesway Corp.,* 199 B.R. 836, 840 (Bankr.S.D.N.Y.1996).

In any event, the sizeable, negotiated Severance Benefits at issue in this case are not the small, routine type of severance pay at issue in *In re Straus–Duparquet, Inc. See In re Jamesway Corp.,* 199 B.R. 836, 840 (citations omitted); *see also In re Commercial Financial Services, Inc.,* 246 F.3d at 1291 (lump sum termination payment equal to base salary is not administrative expense claim). For the same reason, we find those cases which have prorated severance benefits not to be instructive. *E.g., In re Russell Cave Co.,* 248 B.R. 301 (Bankr.E.D.Ky.2000). We further note that the proration cases involve severance pay claims based on length of service. Because Bresko and Johansen's Severance Benefits are not based on length of service, it is not possible to prorate their benefits under the rationale of *In re Russell Cave Co.*

Bresko and Johansen contend that their pre-petition Severance Benefits were "preserved" and/or "re-bargained for" in the Key Employee Motion which was granted by this Court and that they remained employed with the Debtor in reliance thereon. We disagree for the following reasons.

First, the Key Employee Motion did not request that the Severance Benefits be afforded administrative expense status. It merely purported to preserve the pre-petition benefits, presumably as general, unsecured claims.

■ Second, as discussed above, it is generally not possible to convert a pre-petition contract into an administrative expense claim. The Severance Benefits were promised to Bresko and Johansen as consideration for their accepting executive positions with a troubled business back in 1999. Further, Bresko and Johansen did receive payments under the post-petition Retention and Severance Programs. *This* was the consideration for their continued post-petition employment with the Debtor.

Third, in the Key Employee Order, the Committee reserved its right to object to the Debtor's possible assumption of the Executive Employment Agreements.[1] In view of this broad reservation of rights by the Committee, the fact that the Committee also reserved its right to object to the payment of Retirement Benefits does not mean that the Committee waived its right to object to the payment of Severance Benefits.

■ We do not question Bresko and Johansen's contention that they continued their employment with the Debtor in reliance of the expectation that they would receive generous Severance Benefits. However, promissory estoppel requires a showing of damage. Neither Bresko nor Johansen were damaged by their continued employment with the Debtor. Rather, they received their regular salaries as well as monies from the post-petition Retention and Severance Programs.

## B. Retirement Benefits

■ Similarly, because the Retirement benefits arose from pre-petition Executive Employment Agreements, they do not qualify as administrative expense claims. *See supra.*

The Retirement Benefits were not payable until each executive had worked for the company for two full years from the

---

**1.** Assumption of the Executive Employment Agreements may have elevated the pre-petition claims to administrative expenses. Such an assumption was never done.

date of hire. The dates of hire for Bresko and Johansen were August 27, 1997 and February 3, 1998, respectively. Thus, Bresko and Johansen's rights to receive Retirement Benefits vested pre-petition. In other words, like the Severance Benefits, the Retirement Benefits were "earned" pre-petition.

In contrast to the Severance Benefits, the amount of the Retirement Benefits payable to Bresko and Johansen depended on the "number of full years of Executive's employment with the Employer." A portion of Bresko and Johansen's post-petition employment (August 1, 2000 to August 27, 2000 for Bresko; August 1, 2000 to February 3, 2001 for Johansen) is attributable to the making of a full years' worth of employment for each executive. Nonetheless, under the teaching of *In re White Motor Corporation*, we conclude that even this post-petition "work" related to a pre-petition contract and may not be given administrative expense status.

The Sixth Circuit has held that pension benefits actually earned by an employee during the debtor's post-petition operations is to be given administrative expense status. *In re Sunarhauserman*, 126 F.3d at 814 (discussing claim of Pension Benefit Guaranty Corporation). However, we believe that *In re Sunarhauserman* is properly limited to minimum funding contribution claims regarding ERISA-qualified plans. In the present case, there is no evidence that the Debtor's funding of the Retirement Benefits was tied to the employment period of the executives.

### C. 11 U.S.C. § 502(b)(7)

On the basis of the above, Bresko and Johansen have general unsecured claims for their Severance and Retirement Benefits. We now address the applicability of § 502(b)(7) to those general unsecured claims.

■ Section 502(b)(7) of the Bankruptcy Code places a one year cap on a claim of an employee for damages resulting from the termination of an employment contract. This code section was designed to limit the claims of key executives who had been able to negotiate contracts with very beneficial terms. *In re Gee & Missler Services, Inc.*, 62 B.R. 841, 844 (Bankr. E.D.Mich.1986); *see also In re Prospect Hill Resources, Inc.*, 837 F.2d 453, 455 (11th Cir.1988) ("one purpose of § 502(b)(7) was to relieve bankrupt employees of the continuing duty to pay high salaries to officers ... who had been able to exact favorable terms of tenure and salaries while the business prospered"). A claim for severance pay is a claim for damages resulting from the termination of an employment contract. *In re Uly–Pak, Inc.*, 128 B.R. 763, 769 (Bankr.S.D.Ill. 1991); *In re CPT Corp.*, 1991 WL 255679 at *3 (Bankr.D.Minn. Nov.26, 1991).

Thus, we conclude that Bresko and Johansen's claims for Severance Benefits are limited by § 502(b)(7).

■ By its terms, § 502(b)(7) applies when the claim at issue results from the termination of an employment contract. Bresko and Johansen's right to Retirement Benefits arose from two years' of employment with the Debtor and did not result from the termination of their Executive Employment Agreements. *See In re Irvine–Pacific Commercial Ins. Brokers, Inc.*, 228 B.R. 245 (9th Cir. BAP 1998).

Thus, we conclude that Bresko and Johansen's claims for Retirement Benefits are not limited by § 502(b)(7).

### III. Conclusion

We find that Bresko has a general unsecured claim for his Severance Benefits in the amount of $150,000 and a general unsecured claim for his Retirement Benefits in the amount of $62,860.

We find that Johansen has a general unsecured claim for his Severance Benefits in the amount of $135,000 and a general unsecured claim for his Retirement Benefits in the amount of $69,111.

IT IS SO ORDERED.