In the Matter of LHI HOLDING, INC., f/k/a B & R Foods Holding, Inc., f/k/a Treasure Isle, Inc., Debtor.

LHI HOLDING, INC., Plaintiff,

v.

David R. LEVINSON, Defendant.

Bankruptcy No. 91–11952–8B1.
Adv. No. 91–819.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 13, 1992.

Robert B. Glenn, Tampa, Fla., for LHI Holding, Inc.

Larry M. Foyle, Robert V. Williams, Tampa, Fla., for David R. Levinson.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing on Plaintiff's Motion for Summary Judgment on Adversary Complaint. The Court, having heard the argument of counsel and having reviewed the Motion, the record, and the memoranda filed by the parties, finds as follows:

On November 23, 1986, David R. Levinson and Treasure Isle, Inc., entered into an Agreement establishing terms and conditions of Levinson's continued employment and settling certain other matters. In 1987 Levinson brought suit in state court on this Agreement. In a Four–Count Complaint, Levinson sued Treasure Isle, Marshall E. Levinson, and Rick B. Levinson. In Count I, Levinson alleged Treasure Isle had breached the Agreement thereby damaging Levinson and demanded that Treasure Isle continue to provide Levinson with all of the compensation and benefits provided in Paragraph 1 of the Agreement. Paragraph 1 of the Agreement provided Levinson would be employed by Treasure Isle from the date of the Agreement until his 65th birthday and would be compensated with a salary, an automobile allowance, a fringe benefit allowance, life insurance, health and medical benefits, and participation in the retirement plan and the thrift and savings plan. In Count II, Levinson sought to enjoin Treasure Isle from withholding Levinson's life insurance and health and medical benefits provided in Paragraph 1 of the Agreement. In Count III, Levinson sued Marshall A. Levinson and Rick B. Levinson for tortious inducement of breach of contract; and in Count IV, Levinson sued Marshall A. Levinson and Rick B. Levinson for intentional interference with business and contractual relationship.

On May 10, 1991, the jury returned a verdict solely against Treasure Isle.[1] The jury specifically found Levinson had performed his duties as a seafood broker and sales representative of Treasure Isle in accordance with the terms of the Agreement and Levinson had not in any manner breached the Agreement. The jury also found Treasure Isle had breached the Agreement on July 31, 1987, and Levinson had been terminated without cause. Pursuant to the jury verdict, the state court, on July 31, 1991, entered final judgment in favor of Levinson and against Treasure Isle in the amount of $2,881,649.03, which was recorded on August 12, 1991.

---

1. The record is devoid of any information as to the disposition by the state court of Counts III and IV of the Complaint.

On September 18, 1991, LHI Holding, Inc., f/k/a B & R Foods Holding, Inc., f/k/a Treasure Isle, Inc. (Debtor), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). Debtor thereafter filed a Two–Count Complaint against Levinson which initiated the instant adversary proceeding. In Count I Debtor sought to avoid a preference under Section 547 of the Bankruptcy Code. In Count II Debtor seeks a declaration that any claim against the estate by Levinson arising out of the Agreement or state court judgment on the Agreement is limited by Section 502(b)(7). This Court earlier granted Debtor's Motion for Summary Judgment with respect to Count I of the Complaint. Only Count II of the Complaint is now before the Court.

■ The issue is whether Levinson's claim is limited by Section 502(b)(7) of the Bankruptcy Code. Section 502(b)(7) allows a claim except to the extent that:

if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.

The plain language of Section 502(b)(7) serves to limit significantly Levinson's claim in this case. Levinson, a former employee of Treasure Isle, holds a claim [2] for damages resulting from Treasure Isle's termination of his employment agreement. Although Levinson submitted an affidavit that when he executed the Agreement he understood and intended that the Agreement be far more than an employment agreement, his claim against Treasure Isle, which was extensively litigated in state court and which has been reduced to judgment, was based solely on Treasure Isle's breach of the Agreement with respect to Levinson's employment. Levinson sued Treasure Isle based on Treasure Isle's breach of Paragraph 1 of the Agreement. Paragraph 1 provided that Treasure Isle would employ Levinson and would compensate Levinson for his employment.

In an attempt to avoid the plain language of Section 502(b)(7), Levinson relies on *In re Vic Snyder, Inc.*, 23 B.R. 185 (Bankr. E.D.Pa.1982). The *Vic Snyder* court held Section 502(b)(7) is inapplicable to a claim arising from a breach of an employment contract where the breach occurred four and one-half years before the employer sought bankruptcy protection and where the claim was reduced to judgment almost one and one-half years before the bankruptcy was filed. The *Vic Snyder* court found the termination of the employee and the fixing of damages by the state court "too remote from the bankruptcy to be affected by the Code,"[3] and held Section 502(b)(7) inapplicable because "this provision was intended to apply to breaches of contract flowing from the bankruptcy or its immediate consequences." *Vic Snyder*, 23 B.R. at 186. *Vic Snyder* would in large part eviscerate Section 502(b)(7).

The *Vic Snyder* court is not alone in its theory the employee's termination should bear some proximate relationship to the debtor's financial condition before the limit

---

**2.** Claim means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..." 11 U.S.C. § 101(5). The character of the claim is not altered simply because it has been reduced to judgment. *In re CPT Corp.*, No. 4–90–5759, 1991 WL 255679, 1991 Bankr.LEXIS 1730 (Bankr. D.Minn. Nov. 27, 1991).

**3.** Although the fixing of damages by the state court occurred almost one and one-half years before the bankruptcy was filed, the debtor's post-trial motions to overturn the state court jury verdict were denied just three short weeks before the bankruptcy was filed. *In re Vic Snyder, Inc.*, 50 B.R. 631, 633 (Bankr.E.D.Pa.1985). It does not require a great leap to postulate that damages awarded in the state court action may well have precipitated the filing of the bankruptcy.

of Section 502(b)(7) is applicable. The Court of Appeals for the Eleventh Circuit has opined, in dictum, "One purpose of section 502(b)(7) was to relieve bankrupt employers of the continuing duty to pay high salaries to officers and owner-managers who had been able to exact favorable terms of tenure and salaries while the business prospered ... [In this situation,] ongoing obligations, bilateral in nature, are discontinued by bankruptcy." *Folsom v. Prospect Hill Resources, Inc. (In re Prospect Hill Resources, Inc.),* 837 F.2d 453, 455 (11th Cir.1988). Although common sense might tempt a court to require some nexus between an employee's termination and the debtor's worsening financial condition in order to impose the limitation of Section 502(b)(7), Congress did not require any such nexus. The Bankruptcy Code is replete with temporal limits on the application of numerous sections. Congress certainly knows how to enact such provisions, but has not chosen to do so with respect to Section 502(b)(7). This Court is not inclined to limit the application of Section 502(b)(7) in a manner not enacted by Congress. *Accord In re CPT Corp.,* No. 4–90–5759, 1991 WL 255679, 1991 Bankr.LEXIS 1730 (Bankr.D.Minn. Nov. 27, 1991); *Johnson v. Beck (In re Johnson),* 117 B.R. 461 (Bankr. D.Minn.1990); *In re Murray Industries,* 114 B.R. 749 (Bankr.M.D.Fla.1990). Thus, this Court declines to adopt the rule of *Vic Snyder.*[4] Section 502(b)(7) is applicable to all claims resulting from the termination, pre-petition or post-petition, of an employment contract.

Levinson raises the spectre that rejection of *Vic Snyder* will give employers *carte blanche* wrongfully to breach employment contracts and then seek refuge in the Bankruptcy Court. It seems farfetched to imagine financially sound employers scurrying into bankruptcy in order to mitigate damage awards for wrongfully breaching employment contracts. Should that situation arise, however, this Court most assuredly will deal with it at that time. Such a scenario, though, provides no basis for contravening the plain language of Section 502(b)(7).

Levinson also seeks to raise a question of fact by submitting an unrebutted affidavit in which he avers that the Agreement of November 23, 1986, was far more than just an employment agreement. Levinson avers he understood, and it was his intent, that the Agreement be far more than an employment agreement and, in fact, was a settlement agreement wherein he gave up substantial rights in exchange for monetary compensation.

Whatever Levinson's intent may have been on November 23, 1986, he holds a state court judgment premised solely on breach of an employment agreement.[5] Title 28 U.S.C. Section 1738 directs federal courts to accord full faith and credit to properly authenticated records and judicial proceedings of state courts. This Court examined authenticated copies of the complaint, the jury verdict form, and the final judgment in the state court action, and the inescapable conclusion is that Levinson's judgment, and hence his claim against Debtor, is based solely on Treasure Isle's breach of an employment agreement, namely, the Agreement of November 23, 1986. Thus, the plain language of Section 502(b)(7) encompasses Levinson's claim and limits that claim to the compensation provided by the Agreement, without acceleration, for one year following July 31, 1987, plus any unpaid compensation due under the Agreement, without acceleration, on July 31, 1987.[6]

---

4. Even if this Court were inclined to adopt the reasoning of *Vic Snyder,* in this case the bankruptcy filing was directly related to the state court judgment.

5. The Court can envision, a situation arising where multiple claims, some arising from the termination of an employment agreement and others not related to the termination of an employment agreement, are disposed of in a single state court judgment. That could have been the case in *Johnson v. Beck (In re Johnson),* 117 B.R. 461 (Bankr.D.Minn.1990), had the former employee's state court claims been reduced to judgment. Those facts, however, are not before this Court. This Court must only deal with Levinson's state court judgment which is premised solely on breach of an employment agreement.

6. This determination, of course, does not limit any other claims Levinson might have against the estate which arise independently of the Agreement.

This Court has considered all arguments and evidence consistent with ruling on a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Since there is no genuine issue as to any material fact and Debtor is entitled to judgment as a matter of law, it is

ORDERED, ADJUDGED AND DE-CREED that Plaintiff's Motion for Summary Judgment on Adversary Complaint is granted. It is further

ORDERED, ADJUDGED AND DE-CREED that any claim against Debtor's estate by Levinson arising out of the Agreement and subsequent state court judgment is limited by the provisions of Section 502(b)(7) of the Bankruptcy Code to the compensation provided by the Agreement, without acceleration, for one year following July 31, 1987, plus any unpaid compensation due under the Agreement, without acceleration, on July 31, 1987.

DONE AND ORDERED.