David R. LEVINSON, Appellant,

v.

**LHI HOLDING, INC., f/k/a Treasure Isle, Inc., f/k/a B & R Foods Holding, Inc., Appellee.**

**In re LHI HOLDING, INC., f/k/a Treasure Isle, Inc., f/k/a B & R Foods Holding, Inc., Debtor.**

**LHI HOLDING, INC., Plaintiff,**

v.

**David R. LEVINSON, Defendant.**

Nos. 92–1086–CIV–T–24B, 91–11952–8B1. Adv. No. 91–819.

United States District Court, M.D. Florida, Tampa Division.

Nov. 29, 1994.

---

Robert V. Williams, Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, FL, for appellant David R. Levinson.

Robert Baltzell Glenn, Glenn, Rasmussen, Fogarty, Merryday & Russo, Tampa, FL, for appellee LHI Holding, Inc.

### ORDER

BUCKLEW, District Judge.

This cause comes before this Court on appeal from a ruling of Bankruptcy Judge Thomas E. Baynes, Jr. of the Middle District of Florida. Appellant/Creditor David R. Levinson appeals from the bankruptcy court's granting of Appellee/Debtor LHI Holding's motion for summary judgment.

The background of the case is undisputed. The case has its origins in a state court complaint filed in 1987 by David R. Levinson against LHI, Marshall Levinson and Rick Levinson. David R. Levinson sued LHI for breach of contract and injunctive relief, while seeking judgment against Marshall and Rick Levinson on several tort claims.

The three men had, over a period of time, struggled for control of the company and its voting proxies. As a result, Marshall and Rick Levinson obtained control over the company. Marshall and Rick Levinson then entered into an agreement with David R. Levinson in November of 1986 in order to prevent hostilities and legal action. It provided that David R. Levinson would be employed with the company for 10 years subsequent to the agreement for the annual salary of $250,-000. It also set forth various benefits and contained a covenant not to sue LHI, or Marshall or Rick Levinson. However, on August 21, 1987, LHI terminated David R. Levinson.

David R. Levinson proceeded to trial in state court on a theory of breach of contract against LHI, as well as tort claims against Marshall and Rick Levinson. On May 10, 1991, David R. Levinson obtained a jury verdict on the breach of contract claim, and on July 31, 1991, he obtained a judgment of $2,881,649.07 in a consolidated case based upon the agreement between the parties. The issue of whether Marshall and Rick Levinson were liable to David R. Levinson was not presented to the jury in the state court case. LHI has appealed the judgment to the

Florida Second District Court of Appeals and that appeal is still pending.

On September 18, 1991, Debtor LHI filed its petition for relief under Chapter 11 of the Bankruptcy Code in the Middle District of Florida, Tampa Division. David R. Levinson filed a proof of claim in the amount of his state court judgment in the Debtor's bankruptcy case.

Debtor filed a two-count adversary complaint against David R. Levinson. Count I of the complaint sought to avoid the lien of the judgment, and Count II sought an order of the bankruptcy court determining that David R. Levinson's claim was limited by § 502(b)(7) of the Bankruptcy Code as arising from the termination of an employment contract. The bankruptcy court first ruled in Debtor's favor on Count I and avoided the lien of the judgment. That decision is immaterial to this appeal. However, on July 13, 1992, the bankruptcy court entered its Order Granting Motion for Summary Judgment in which the Court determined that § 502(b)(7) limited David R. Levinson's claim. 142 B.R. 1007. David R. Levinson then instituted this appeal seeking reversal of the bankruptcy court's order granting summary judgment.

■ On review, the Court cannot modify the bankruptcy court's findings of fact unless they are shown to be clearly erroneous, while the conclusions of law are reviewed **de novo**. Bankruptcy Rule 8013, 11 U.S.C.A.; *See also Pepenella v. Life Ins. Co. of Ga. (In re Pepenella)*, 103 B.R. 299, 300 (M.D.Fla.1988); *In re Owen*, 86 B.R. 691, 693 (M.D.Fla.1988).

Appellant first contends that the bankruptcy court erred in applying § 502(b)(7) of the Bankruptcy Code to limit his claim based on LHI's breach of the agreement. This section states that if a debtor objects to a claim, the court, after notice and a hearing, should determine and allow the full amount of the claim as of the date of the filing except to the extent that—

"(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, or the earlier of such dates; ..."

■ Appellant's first contention is premised upon several arguments that have been handled with a troubling disparity in the various district courts that have confronted the issues. First, Appellant argues § 502(b)(7) does not apply to employment contracts that are not executory at the time the debtor files bankruptcy. To support this conclusion, Appellant claims that the legislative history of § 502(b)(7), as well as its analogous provision, § 502(b)(6), unambiguously state that § 502(b)(7) was not intended to apply to non-executory contracts. Appellant points to further support for this construction in binding Eleventh Circuit precedent. *See, Folsom v. Prospect Hill & Resources, Inc. (In re Prospect Hill & Resources, Inc.)*, 837 F.2d 453 (11th Cir.1988).

Appellant assures this Court that the legislative history unambiguously supports his view; however, he cites no persuasive, relevant legislative authority to advance his position. Appellant's reliance on *Prospect Hill* is misplaced as well. *Prospect Hill* involved a debtor who objected to the claim of a creditor who had a claim for vested retirement benefits. *Id.* at 454. The Eleventh Circuit held that § 502(b)(7) dealt only with claims of employees, and that because the creditor was a retired worker and not an employee, the section did not apply. *Id.* at 455.

Several portions of the *Prospect Hill* decision are extremely important to this appeal, for this Court is bound by its holding if it is analogous to the present case. First, the district court's decision in *Prospect Hill*, which the Eleventh Circuit affirmed, reversed the bankruptcy court's decision and held that because the creditor was not an employee at the time the debtor breached its

contract with him, § 502(b)(7) did not apply to his claim. Secondly, in the decision's concluding sentence, the Eleventh Circuit stated that because the debtor's breach of contract did not occasion a termination of the creditor's performance or employment, his claim falls outside § 502(b)(7). This pair of sentences read together leads this Court to the conclusion that the *Prospect Hill* decision is factually distinguishable from the instant case. Unlike the creditor in *Prospect Hill,* Appellant was an employee of the Debtor and the Debtor's breach of the agreement did occasion Appellant's termination of employment. Consequently, the facts upon which the *Prospect Hill* court based its decision are not present in this appeal.

Appellant argues that the *Prospect Hill* case establishes that a contract must still be executory in order for § 502(b)(7) to apply. While the language in *Prospect Hill* clearly suggests that ongoing obligations, bilateral in nature, are discontinued in bankruptcy and that the executory contract becomes unilateral, thus vesting the bargained-for benefit, the bankruptcy court properly classified this language as dictum.

Supporting this reasoning is the plain language of § 502(b)(7). The language conclusively demonstrates that its application is solely independent of whether a contract is executory or not. Not only is the word "executory" not mentioned anywhere within the statute itself, but the very essence of the statute would be rendered meaningless should Appellant's interpretation apply. Section 502(b)(7) applies from the earlier of (1) the date of filing the petition or (2) the date the employee was terminated. Concluding that a contract must still be executory would support an absurd reading of the section because any employment contract that is terminated pre-petition would cease being executory, and, as Appellant would have it, all pre-petition, non-executory contracts are outside the purview of § 502(b)(7). This result is illogical and void of reason.

■ Appellant's next argument is that when the employee's termination is remote in time or cause to the debtor's bankruptcy, and when the termination did not occur as a result of the debtor's worsening financial condition, § 502(b)(7) should not apply. Appellant points to the cases *In re Vic Snyder,* 23 B.R. 185 (Bankr.E.D.Pa.1982), and *Prospect Hill,* 837 F.2d 453 (11th Cir.1988).

In *Vic Snyder,* the bankruptcy court refused to apply the one year limitation in a case in which the creditor's claims had arisen four years before the bankruptcy filing and had been settled more than one year before the filing. The court ruled that § 502(b)(7) "was not intended to apply in cases such as this; but, rather this provision was intended to apply to breaches of contract flowing from the bankruptcy or its immediate consequences." *Vic Snyder,* 23 B.R. at 186. Appellant attempts to embrace this reasoning in arguing that his claim, and subsequent judgment, did not flow from the bankruptcy or its immediate consequences and is, therefore, exempt from the one year limitation.

In direct conflict with the *Vic Snyder* case are two decisions out of the bankruptcy court in Minnesota styled as *In re Johnson,* 117 B.R. 461 (Bankr.D.Minn.1990), and *In re CPT Corp.,* 1991 WL 255079, 1991 Bankr.Lexis 1730 (Bankr.D.Minn.1991). The *Johnson* court based its holding upon the fact that a simplistic reading of the section results in finding that Congress never suggested, either on the face of the statute or in its comments or legislative history, that only post-petition terminations, or ones after an undeterminable deadline, were contemplated within the statute. The court went on to reason that no standard is enunciated in *Vic Snyder* to determine the cutoff of the application of § 502(b)(7). *Johnson,* 117 B.R. at 467. Consequently, the court reasoned that the section applies to both pre-petition and post-petition terminations of employment contracts regardless of the remoteness of the termination.

The *CPT* court rejected the *Vic Snyder* court's contention that § 502(b)(7) should be limited to claims that were a part of a deepening financial problem prior to bankruptcy. The court concluded that notwithstanding whether a claim was reduced to judgment prior to filing, the fact that a claim is too remote from the filing of the petition is irrelevant to the bankruptcy court's determination of whether to apply § 502(b)(7).

Appellant also cites to *Prospect Hill* for the proposition "that the disparate events of termination and breach compared to debtor's bankruptcy petition render § 502(b)(7) inapplicable." Appellee argues that Appellant misreads *Prospect Hill* because there the court specifically found the debtor's breach did not occasion a termination of the creditor's performance or employment since the creditor was no longer an employee of the debtor, thus the claim fell outside § 502(b)(7). Therefore, Appellant's claim that *Prospect Hill* is concerned with the lack of relationship between bankruptcy on the one hand and breach and termination of employment on the other is misplaced.

Both parties attempt to affiliate their arguments with holdings by Judge Paskay and Judge Kovachevich from the Middle District of Florida Bankruptcy Court and District Court, respectively, from a set of cases decided in 1990 and 1991. *See, In re Murray Indust., Inc.*, 114 B.R. 749 (Bankr.M.D.Fla. 1990) ("*Murray I*"), and *In re Murray Indust., Inc.*, 130 B.R. 113 (Bankr.M.D.Fla. 1991) ("*Murray II*"). Despite each parties' semantics, the undeniable fact is that each decision failed to confront the *Vic Snyder* holding directly. Such reluctance was, and probably still remains, understandable as there was no other directive present at the time. However, given the Minnesota court's rulings, there now exists some alternative approach to examining this issue. This alternative approach involves sensible and consistent reasoning and a sound holding as well.

Absent some concrete appellate directive as to which statutory construction should be applied, this Court will err on the side of logical statutory interpretation and apply the rule set forth by the court in *In re Johnson* and *In re CPT Corp.* This court refuses to read words into a statute or establish a construction that quite simply is not there. Establishing new statutory language is a job better suited for the legislature.

Therefore, the Court affirms the bankruptcy court's determination that § 502(b)(7) operates to limit Appellant's claim resulting from breach of the agreement.

■ Appellant lastly argues, in support of his contention that § 502(b)(7) should not apply to the instant case, that the bankruptcy court erred in failing to include compensation due for the four years from the time that he was dismissed as an employee by LHI to the date of his state court final judgment that liquidated his claim in the allowed amount of his claim. Appellant's argument, thus, requests the Court to find that the date of his termination for purposes of applying § 502(b)(7) was the date that the judgment was entered (i.e., July 31, 1991). However, the date Appellant was terminated was not the date the judgment was issued. Section 502(b)(7) provides that the date to be used for computation of the allowable amount is to be the earlier of the date employment was terminated or the date of filing, not from the date a state court eventually liquidates a claim based upon breach of an employment contract.

Another contention Appellant raises on appeal is that the bankruptcy court erred when it refused to consider the factual totality of the state court action brought by him against LHI to determine the true nature of the final judgment obtained by him. Appellant argues that because LHI has filed a bankruptcy petition and asserted the new defense of § 502(b)(7), which is not viable in any other forum, Appellant should be allowed to undo any ill effects of the state court judgment as may be necessary to meet the newly created defense of § 502(b)(7), which now seeks to limit his claim.

■ Quite obviously, certain aspects of the agreement in question are sufficient to qualify it as an employment contract. In *In re Charter Co.*, 82 B.R. 144 (Bankr.M.D.Fla. 1988), the court held that an employment contract is within the purview of § 502(b)(7) if it establishes the terms and conditions of an employment relationship. The opinion of *In re Johnson, supra*, also provides guidance as to typical provisions in an employment contract. The bankruptcy court relied upon these two decisions in holding that because the agreement provided for a salary, automobile allowance, a fringe benefit allowance, life insurance, health and medical benefits, and participation in the retirement plan, it was properly characterized as an employment

contract. Appellant, however, claims that it was much more.

Appellant maintains that the bankruptcy court erred when it refused to consider the factual totality of the state court proceeding to determine the true nature of the judgment. Appellant cites *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), as authority for this Court to require the bankruptcy court to conduct a further in-depth analysis of the genesis of his claims that are now being asserted to meet the defense of LHI's bankruptcy, and *Johnson*, *supra*, and *Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir.1991), for the proposition that the bankruptcy court did not examine the underlying state court proceeding closely enough.

Appellant's claims were not contingent and unliquidated based on a multi-theory state court complaint as in *Johnson*. In fact, although the state court complaint was a four-count complaint, Appellant sought relief against the Debtor only on the grounds of breach of the contract and injunctive relief, seeking entitlement to certain benefits under the agreement. As mentioned before, the remaining two counts sought relief against Marshall and Rick Levinson on tort claims. The state court verdict and judgment establish liability solely against LHI for termination of the agreement. The lone two counts against Appellee were based exclusively upon breach of contract theories. Thus, the Court holds that the bankruptcy court thoroughly and properly reviewed the state court proceedings in determining that the true nature of the judgment was based solely on LHI's termination of the agreement.

Lastly, Appellant asks this Court to reverse the bankruptcy court's summary judgment order on the grounds that it erred by issuing such an order when the only actual record affidavit was from the non-moving party and is uncontroverted. Appellant's affidavit seeks to create a factual issue by arguing it was Appellant's understanding that the agreement was really a settlement and not an employment agreement. The bankruptcy court held that Appellant's affidavit did not raise any material issue of fact.

Again, Appellant cites to *Brown v. Felsen* for the suggestion that the case preserves the rights of a judgment creditor to relitigate issues outside the four corners of a judgment when a debtor interposes the defense of bankruptcy. The Court agrees with Appellee in that Appellant does not simply desire to relitigate his claim and establish liability based upon grounds other than breach of the agreement; rather, he desires to have the judgment stand for something it is not—a liquidated claim based upon tort liability or other theories. The bankruptcy court was clear in holding that its order applied to only to limit Appellant's claim represented by the judgment. The order does not limit any other claims Appellant may have against the estate that arise independently of the agreement, thus he is not in the position of "having to undo any ill effects of the judgment." What he must do is establish liability against LHI on grounds other than a breach of the agreement.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

(1) The bankruptcy court's order granting Appellee's motion for summary judgment is **affirmed**; and

(2) The Clerk is directed to close this case.

**DONE** and **ORDERED.**