Ronald ANTHONY, Appellant,

v.

INTERFORM CORP., Stephen
I. Goldring, Trustee.

No. 95–3550.

United States Court of Appeals,
Third Circuit.

Submitted pursuant to Third Circuit
LAR 34.1(a) July 16, 1996.

Decided Sept. 25, 1996.

David A. Hoffman, Pittsburgh, PA, for Appellant Ronald Anthony.

Robert G. Sable, Sable, Makoroff & Gusky, Pittsburgh, PA, for Appellee Interform Corp.

Before: SLOVITER, Chief Judge,
COWEN and ROTH Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

In this case of first impression we must decide whether § 502(b)(7) of the Bankruptcy Code can limit the recovery of a prepetition judgment creditor in a Chapter 11 bankruptcy proceeding when the creditor's claim arose from the wrongful termination of an employment contract that had been breached over two years before the bankruptcy petition was filed. We must also decide whether the bankruptcy court's decision to deny without prejudice Ronald Anthony's first motion to dismiss Interform Corporation's bankruptcy petition amounted to a procedural due process violation. We find Anthony's due process argument to be without merit. We further hold that the plain language of 11 U.S.C. § 502(b)(7) mandates that Anthony's claim be reduced to one-year's pay plus benefits under the terms of the statute. Accordingly, we will affirm the September 6, 1995 judgment of the district court, which upheld the bankruptcy court's reduction of Anthony's unsecured claim from $656,316 to $155,160, pursuant to the terms of § 502(b)(7).

### I.

The material facts concerning Anthony's claim are not in dispute. On September 30, 1988, Interform hired Anthony for a term of employment that was to last until December 31, 1993. Under the agreement, Anthony was to receive an annual salary of $120,000 plus certain benefits. On December 31, 1990, the agreement was amended to increase Anthony's annual salary to $150,000. His term of employment was also extended for two more years. Despite this purported extension, Anthony was terminated in September of 1991.

Anthony contested Interform's action and his grievance was submitted to arbitration. On August 27, 1993, an arbitration award was entered in his favor in the amount of $656,316, for the damages resulting from the termination of his employment contract. Anthony subsequently obtained a judgment in this amount in the Court of Common Pleas of Allegheny County, Pennsylvania. Anthony's attempt to execute upon the judgment, however, was impeded when Interform filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 12, 1994. On March 17, 1994, Anthony filed a motion pursuant to 11 U.S.C. § 1112(b) to dismiss Interform's bankruptcy petition. He alleged that Interform had filed the petition in bad faith and with the intention of abusing the judicial process. The bankruptcy court held a hearing on this issue on April 19, 1994. At the conclusion of the hearing, the court issued an order denying the motion to dismiss without prejudice. On May 10, 1994, Anthony filed a proof of claim in the amount of the judgment he obtained from the Court of Common Pleas.

On May 17, 1994, Interform filed a proposed plan of reorganization and disclosure statement. Two amended plans were filed subsequently. Interform filed an objection to Anthony's claim on June 8, 1994. On July 14, 1994, the bankruptcy court entered an order approving the second amended disclosure statement and scheduled a hearing on confirmation of the second amended plan for August 17, 1994. On August 23, 1994, the bankruptcy court entered an order confirming the plan of reorganization.

On August 11, 1994, Anthony filed his second motion to dismiss Interform's bankruptcy petition. A hearing on this matter was held on September 27. On December 13, 1994, the bankruptcy court entered separate orders; one reduced the recovery Anthony was eligible to obtain for his wrongful termination under the terms of 11 U.S.C. § 502(b)(7), and the other denied his § 1112(b) motion to dismiss. The district court affirmed the judgment of the bankruptcy court in an order dated September 6, 1995. This appeal followed.

### II.

The district court had jurisdiction pursuant to 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. "Our review of the district court's interpretation of the Bankruptcy Code is plenary[,]" *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 301 (3d Cir.1995), *cert. denied,* —— U.S.

——, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996), as is our review of Anthony's claim that his procedural due process rights have been violated. *See United States v. Parson*, 955 F.2d 858, 873 n. 22 (3d Cir.1992).

### III.

Anthony's principal claim is that § 502(b)(7) does not apply to pre-petition judgments. In support of this proposition, he relies primarily upon the decision of the Bankruptcy Court for the Eastern District of Pennsylvania in *In re Vic Snyder, Inc.*, 23 B.R. 185 (Bankr.E.D.Pa.1982). Because the disposition of Anthony's appeal essentially hinges upon whether we accept the *Vic Snyder* court's interpretation of § 502(b)(7), we will analyze that case and the subsequent decisions that have criticized it in some detail.

### A.

Section 502(b)(7) of the Bankruptcy Code provides that

(b) ... if ... objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

...

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under the such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates[.]

11 U.S.C. § 502(b)(7). The question whether § 502(b)(7) applies to pre-petition judgments that arise from the termination of an employment contract is one of first impression in this Circuit.

### 1.

Anthony understandably relies upon the bankruptcy court decision in *Vic Snyder* to support his argument that Congress did not intend § 502(b)(7) to apply to pre-petition judgments. *Vic Snyder* involved an employee (Bruce Stern) who was hired by Vic Snyder, Inc. in August of 1976 and fired without notice six months later. Stern obtained a judgment for his wrongful termination in the Court of Common Pleas of Philadelphia County in May of 1980. In October of the following year, Vic Snyder filed for Chapter 11 bankruptcy. Thereafter, Stern filed a proof of claim for $104,001.63, the amount of his state-court judgment. Vic Snyder sought to reduce its exposure to Stern to $22,948.48 by operation of § 502(b)(8) of the Bankruptcy Code.[1]

The *Vic Snyder* court framed the operative legal question as "whether the limitation which the Code places on allowance of claims arising from the termination of an employment contract applies to a claim arising from an employment contract terminated several years prior to the filing of the petition for reorganization and where the claim had been reduced to judgment by the former employee." 23 B.R. at 186. The court concluded that the Bankruptcy Code's limitation on the assertion of employment contract claims was not so broad.

The *Vic Snyder* court emphasized that Stern had been terminated more than three years before the state court entered judgment and that the bankruptcy petition had been filed over four and one-half years after Stern's termination. Accordingly, the court held that "the termination of Stern and the fixing of damages by the state court [were] too remote from the bankruptcy to be affected by the Code." *Id.* The court reasoned

---

**1.** Section 502(b)(7) had been codified at § 502(b)(8) prior to the revision of the Bankruptcy Code in 1984.

that § 502(b)(8) was inapplicable to cases such as this because it "was intended to apply to breaches of contract flowing from the bankruptcy or its immediate consequences." *Id.*

Anthony relies upon the following principles from *Vic Snyder*, which he asserts should be controlling in the present case: (1) Congress intended § 502(b)(7) to apply to executory contracts, not pre-petition judgments; (2) there must be a cognizable nexus between the terminated employee's contract claim and the bankruptcy; and (3) in order to fall within the reach of § 502(b)(7), a claim may not be too remote in time from the date of the filing of the bankruptcy petition. Unfortunately for Anthony, bankruptcy court decisions that have addressed these issues after *Vic Snyder* was decided have routinely rejected all these arguments.

**2.**

The reasoning and analysis of the *Vic Snyder* decision were sharply criticized by the Bankruptcy Court for the District of Minnesota in *Johnson v. Beck (In re Johnson)*, 117 B.R. 461 (Bankr.D.Minn.1990). The *Johnson* court held that § 502(b)(7) "operates to put a 'cap' on the amount of the employment-related claim of a terminated employee of the debtor, regardless of the amount of the claimant's asserted or actual right to damages under state law." *Id.* at 465. The *Johnson* court rejected the creditor's arguments, premised upon the *Vic Snyder* decision, that "the alleged breach giving rise to his claim was 'too remote in time'" from the bankruptcy filing and that "§ 502(b)(7) does not apply because the termination giving rise to his claim did not 'arise out of' [the] petition for bankruptcy relief, and did not stem from any consequence of the filing." *Id.* at 466. In so holding, the *Johnson* court characterized the *Vic Snyder* decision as "an isolated holding, not explicitly followed in any other reported decision." *Id.* at 467. The *Johnson* court then proceeded to criticize the analytical framework of the *Vic Snyder* decision on a number of counts:

> First, to the extent it would even countenance the application of the cap to a claim based on pre-petition termination, it does

not enunciate a standard for the cutoff of that application. Beyond this, the major difficulty with *Vic Snyder* is that, on its face, § 502(b)(7) contains no such qualification; there is no language expressly limiting the cap to claims based on post-petition terminations, or to both post-petition terminations and to pre-petition terminations which occurred within a specific time before the bankruptcy filing, after the occurrence of specified events, or after some other objectively-determinable deadline. Further, the legislative history to § 502(b)(7) contains no support for such a conclusion.

> The intent of Congress must be divined first from the face of the legislation which it passes. Congress has manifested no intent to limit the application of the § 502(b)(7) cap to claims arising after a specific point in a debtor-employer's business history. Were the court to adopt Beck's preferred [sic] rationale to impose such a qualification, it would engage in an act of judicial legislation.

*Id.* (citation omitted). The *Johnson* court's cogent criticisms of the *Vic Snyder* holding were seconded by the Bankruptcy Court for the Middle District of Florida and the United States District Court for the Middle District of Florida in *LHI Holding, Inc. v. Levinson (In re LHI Holding, Inc.)*, 142 B.R. 1007 (Bankr.M.D.Fla.1992), *aff'd,* 176 B.R. 255 (M.D.Fla.1994).

In *LHI*, as in *Vic Snyder*, the debtor's breach occurred over four years prior to the time its Chapter 11 bankruptcy petition was filed. Furthermore, the creditor in *LHI* had a $2,881,649.03 claim reduced to judgment. 142 B.R. at 1008. Nonetheless, the bankruptcy court applied § 502(b)(7) to substantially reduce the judgment creditor's claim. In so doing, the court rejected any distinction between § 502(b)(7)'s treatment of executory contracts and pre-petition judgments. The *LHI* bankruptcy court cited the Bankruptcy Code's definition of the term "claim," which is defined as a "right to payment, *whether or not such right is reduced to judgment,* liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.] . . ."

*Id.* at 1009 n. 2 (emphasis added) (internal quotation marks omitted) (quoting 11 U.S.C. § 101(5)). The *LHI* court reasoned that pursuant to this definition, "[t]he character of the claim [under § 502(b)(7)] is not altered simply because it has been reduced to judgment." *Id.*

The bankruptcy court in *LHI* concluded that "Section 502(b)(7) is applicable to all claims resulting from the termination, pre-petition or post-petition, of an employment contract." *Id.* at 1010. The *LHI* court expressly rejected *Vic Snyder's* view that § 502(b)(7) "was intended to apply [only] to breaches of contract flowing from the bankruptcy or its immediate consequences." *Id.* at 1009 (internal quotation marks omitted) (quoting *Vic Snyder,* 23 B.R. at 186). The court declared that such a reading would contravene the statute's plain language and "in large part eviscerate Section 502(b)(7)." *Id.*

The *LHI* bankruptcy court observed that when one looks to the language of § 502(b)(7), it is apparent that Congress did not require any nexus "between an employee's termination and the debtor's worsening financial condition...." *Id.* at 1010. The court commented that

> [t]he Bankruptcy Code is replete with temporal limits on the application of numerous sections. Congress certainly knows how to enact such provisions, but has not chosen to do so with respect to Section 502(b)(7). This Court is not inclined to limit the application of Section 502(b)(7) in a manner not enacted by Congress.

*Id.* The district court affirmed the judgment of the bankruptcy court in a reported opinion. 176 B.R. at 255.

Rejecting the argument that § 502(b)(7) applies only to executory contracts, the district court in *LHI* observed that the plain language of § 502(b)(7)

> conclusively demonstrates that its application is solely independent of whether a contract is executory or not. Not only is the word "executory" not mentioned anywhere in the statute itself, but the very essence of the statute would be rendered meaningless should Appellant's interpretation apply. Section 502(b)(7) applies from

the earlier of (1) the date of filing the petition or (2) the date the employee was terminated. Concluding that a contract must still be executory would support an absurd reading of the section because any employment contract that is terminated pre-petition would cease being executory, and, as Appellant would have it, all pre-petition, non-executory contracts are outside the purview of § 502(b)(7). This result is illogical and void of reason.

*Id.* at 258. The *LHI* court elected to follow the *Johnson* precedent because it "refus[ed] to read words into a statute or establish a construction that quite simply is not there. Establishing new statutory language is a job better suited for the legislature." *Id.* at 259.

The Bankruptcy Court for the Western District of Pennsylvania also addressed the *Vic Snyder* decision in *In re Allegheny International, Inc.,* 158 B.R. 332 (Bankr.W.D.Pa. 1992). The creditor in *Allegheny International, Inc.* cited *Vic Snyder* to support his contention that § 502(b)(7) applies only to post-petition employment contract claims. The bankruptcy court rejected this argument, holding that the "earlier of" language of § 502(b)(7)(A) "clearly contemplates the termination of an employment contract prior to the filing of the bankruptcy petition." *Id.* at 340. The court further held that "[t]here is nothing ... in the language of 11 U.S.C. § 502(b)(7) to suggest that the Bankruptcy Code only applies to the rejection of executory contracts." *Id.* In so holding, the court observed that "§ 502(b)(7) neither uses the bankruptcy term 'rejection,' nor refers to 11 U.S.C. § 365(a) which addresses the assumption and rejection of executory contracts." *Id.* at 340–41.

The approach of the *Johnson, LHI* and *Allegheny International, Inc.* courts was also adopted by a United States Bankruptcy Appellate Panel of the Ninth Circuit in *Bitters v. Networks Electronic Corp. (In re Networks Electronic Corp.),* 195 B.R. 92 (9th Cir. BAP 1996). The *Networks Electronic Corp.* court held that the limitations set forth in § 502(b)(7) were applicable in a case where the claimant was a judgment creditor

who had been terminated almost nine years before the debtor filed for Chapter 11 bankruptcy. The application of § 502(b)(7) reduced the creditor's recovery from $820,000 to $52,525.04. *Id.* at 97.

The *Networks Electronic Corp.* court rejected appellant's arguments that the application of § 502(b)(7) was limited to executory contracts and that it "does not apply to contracts where the termination is remote to the bankruptcy filing." *Id.* at 99. In its discussion of the timing issue, the court observed that

> Section 502(b)(7) does not provide an express time reference in its application to employment contracts. Its words that it limits the claim to compensation for one year "following the earlier of" the date of the filing of the petition or the date of termination of employment, suggest that *employment contract claims that arise any time prepetition are subject to the cap.* There is nothing in the Bankruptcy Code or its legislative history to indicate that the section should not apply to contract terminations which are deemed to be too remote from the filing of the petition.

*Id.* (emphasis added) (citations and internal quotation marks omitted). The *Networks Electronic Corp.* court therefore chose "to side with the majority of cases which have rejected *Vic Snyder* as contrary to the unambiguous statutory provisions." *Id.* at 100. *See* Sarah C. Lichtenstein, *Termination of Employment Contracts In Bankruptcy,* N.Y.L.J., Apr. 17, 1995, at 1 ("Except for one perhaps deviant decision [*Vic Snyder*], which has inspired creditor ingenuity in fashioning arguments to come within its perceived parameters, most courts conclude that the Bankruptcy Code means what it says and no more.").

 We find the reasoning and analysis of the courts that have rejected the *Vic Snyder* holding to be persuasive. Accordingly, we hold that the express terms of § 502(b)(7) of the Bankruptcy Code mandate that this section be interpreted to place a cap upon *all* employment contract termination claims, regardless of whether: (1) the claim has been reduced to judgment; (2) there is any connection between the employee's termination and the debtor's financial problems;

and (3) a number of years has passed between the employee's termination and the debtor's filing of the bankruptcy petition. All of these considerations are irrelevant. We further hold that the bankruptcy court properly reduced the recoverable amount of Anthony's employment termination claim from $656,316 to $155,160.

**B.**

Anthony next contends that his procedural due process rights were violated by the bankruptcy court's decision to deny without prejudice his first § 1112(b) motion to dismiss Interform's bankruptcy petition. We find this claim to be without merit.

 "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Anthony argues that his due process rights were violated when the bankruptcy court denied, without prejudice, his first § 1112(b) motion to dismiss the Interform bankruptcy proceeding, on the ground that the petition had been filed in bad faith. The record, however, does not support Anthony's assertion that his procedural due process rights were violated. Anthony's first motion to dismiss was denied in April of 1994 "with the court's specific authorization that the issue could be revisited at the time of the disclosure statement and plan." *Interform Corp. v. Anthony (In re Interform Corp.),* No. 94–20094, slip op. at 2 (Bankr.W.D.Pa. Dec. 13, 1994) (§ 1112(b) Opinion). After Anthony filed his second motion to dismiss, he "was given notice of the opportunity to file written briefs and present oral argument with respect to his bad faith claim, and he took advantage of those opportunities." *Anthony v. Interform Corp. (In re Interform Corp.),* No. 95–61, slip op. at 2 (W.D.Pa. Sept. 6, 1995). The bankruptcy court considered and properly rejected Anthony's "bad faith" argument. *See Interform Corp. v. Anthony (In re Interform Corp.),* No. 94–20094, slip op. at 7–8 (Bankr.W.D.Pa. Dec. 13, 1994)

(§ 502(b)(7) Opinion). Indeed, even Anthony's trial counsel later represented to the bankruptcy court that his first motion to dismiss had been "premature." App. at 161. We therefore reject Anthony's argument that the requirements of procedural due process were not met.

## IV.

We hold that the plain language of § 502(b)(7) requires that this section be applied to pre-petition judgments that arise from the termination of employment contracts. Accordingly, we will affirm the September 6, 1995 judgment of the district court.