In re **DORNIER AVIATION (NORTH AMERICA), INC.**

**Louis Harrington and John Wolf, Appellants,**

v.

**Dornier Aviation (North America), Inc. By and through DANA Liquidating Trust, Appellee.**

Civ.A. No. 03–1274–A.

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 3, 2004.

Warren Robert Stein, Warren R. Stein PC, Leesburg, VA, for Plaintiffs.

Dylan Gillespie Trache, Wiley Rein & Fielding LLP, McLean, VA, for Defendants.

## *MEMORANDUM OPINION*

ELLIS, District Judge.

At issue in these consolidated bankruptcy appeals is whether 11 U.S.C. § 502(b)(7) of the Bankruptcy Code operates to limit appellants' claims against the bankrupt estate for damages resulting from the failure of the bankrupt, appellants' employer, to provide appellants with ninety days notice prior to termination as required by the terms of their employment agreements.

## I.

Appellee Dornier Aviation (North America), Inc. ("DANA") is a supplier of aircraft maintenance and repair services and parts and an affiliated company of Fairchild Dornier Corporation ("Fairchild"), a Delaware corporation. On April 24, 2002, several alleged creditors filed an involuntary Chapter 7 petition against DANA. Because DANA did not object to the petition, the bankruptcy court in this district entered an Order for Relief and an order converting the case to Chapter 11 on May 20, 2002. After the debtor's attempted reorganization proved unsuccessful, the bankruptcy court entered an order on February 14, 2003 confirming DANA's liquidation plan. Thereafter, pursuant to the liquidation plan and the bankruptcy court's order, all of DANA's assets were transferred on February 25, 2003 to a new entity, DANA Liquidating Trust ("DLT"). DLT is the entity charged with administering the assets of the estate and pursuing objections to any future claims filed in the bankruptcy case.

Appellants Harrington and Wolf were high level executive employees of DANA. Both were hired in October 2000, Harrington as the President and Chief Executive Officer at a base salary of $750,000 per year and Wolf as the Chief Operating Officer at a base salary of $400,000 per year. Pursuant to their employment agreements, both executives, in addition to their base salaries, were also entitled to annual incentive bonus compensation, company stock, life, health, and disability insurance, tax preparation and financial planning services, country club or fitness club memberships, four weeks annual vacation, as well as other benefits. Of note here is that the executives' employment agreements (i) provided that the executives were entitled to two years severance pay in the event they were terminated by the company without cause [1] and (ii) required that the company either provide ninety days notice prior to termination without cause, or alternatively, pay the executive his base salary for ninety days post termination. [2]

---

**1.** *See* Employment Agreement ¶ 5(f)(iii).

**2.** *See* Employment Agreement ¶ 5(g)(iii)(C) ("'Date of Termination' shall mean ... if the Executive's employment is terminated by the

Both executives were terminated in 2002—Harrington in early April and Wolf in late June. Neither party disputes that appellants were terminated without cause and without ninety days prior notice.

Both appellants asserted claims for damages stemming from their termination and accordingly filed proofs of these claims against DLT on September 12, 2002. Harrington's claim (No. 122) is for $1,359,972 and Wolf's claim (No. 129) is for $990,480.[3] On May 7, 2003, DLT objected to the claims on various grounds, including 11 U.S.C. § 502(b)(7), which DLT argues limits appellants' allowed claims to the compensation the executive would have received during the year after his termination. The parties thereafter engaged in negotiations that resulted in the resolution of many issues raised in DLT's objections, including limiting appellants' claims for two years severance pay to one year.[4] Nonetheless, the parties were unable to resolve whether appellants' were entitled to an additional ninety days base salary as a consequence of DANA's failure to provide ninety days notice prior to termination ("notice compensation") or instead, whether this claim was also limited by § 502(b)(7).

The bankruptcy court then held a hearing on DLT's objection to appellants' claims on August 25, 2003 in the course of which it heard argument but no testimonial evidence.[5] During this hearing, the bankruptcy court ruled that appellants' claims for notice compensation were limited by § 502(b)(7). More specifically, the bankruptcy court found that the requirement that DANA provide ninety days notice prior to termination "in effect [ensured that] if [the employees] are not given notice, they get an additional three months of severance," and that this compensation, like the two year severance pay, was limited by § 502(b)(7). As a consequence, the bankruptcy court entered an order that partially allowed both claims. The bankruptcy court allowed Harrington's claim in the amount of $793,561 and Wolf's claim in the amount of $430,204; $4650 of each claim was allowed as a priority claim, while the remainder was a general unsecured claim. As a condition to partial allowance of the claims, the bankruptcy court required Harrington and Wolf to execute a general release of all claims against DLT.

Wolf and Harrington each filed a timely

---

Company Without Cause, due to the Executive's Disability or by the Executive for any reason, the date that is 90 days after the date on which Notice of Termination is given as contemplated by Section 5(e), provided that the Company may, in lieu of the notice period provided herein, pay Executive his Base Salary as then in effect for the applicable notice period."). This provision was incorrectly marked as ¶ 5(g)(iii)(iii) in Wolf's employment agreement.

3. A third executive, Barry Eccleston, was hired and terminated at the same time as Harrington and Wolf. Eccleston also filed a proof of claim (No. 135) against DLT in September 2002 for $1,276,516, which was only partially allowed. Eccleston has not filed a Notice of Appeal.

4. For instance, during these negotiations, DANA agreed to pay stipulated amounts for tax preparation services, tax equalization from overseas postings, health insurance benefits, and relocation expenses in partial satisfaction of appellants' claims.

5. The bankruptcy code requires a bankruptcy court to hold a hearing if an objection is made to a claim. See 11 U.S.C. § 502(b)(7) ("Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States. . . .").

Notice of Appeal.[6] The appellants then filed a joint motion requesting consolidation of their appeals, which motion was granted.[7] Appellants' argue that their claims for notice compensation are not limited by § 502(b)(7) and thus seek reversal of the bankruptcy court's order, or in the alternative, a remand to the bankruptcy court for further proceedings. Both Harrington and Wolf argue that their claims for ninety days notice compensation should be allowed in full; in this respect, Harrington seeks $184,931 and Wolf seeks $98,630.

1996); *In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992). Mixed questions of law and fact are also reviewed de novo. *See In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003). In this instance, the bankruptcy court's factual findings are not in dispute. Thus, at issue and subject to de novo review here is the bankruptcy court's holding that appellants' claims for ninety days base salary are limited by § 502(b)(7) because DANA failed to provide ninety days notice prior to termination.

## II.

■ A district court's scope of review of a bankruptcy court's order is well-established. Whereas a bankruptcy court's findings of fact are reviewed only for clear error, its conclusions of law are subject to de novo review. *See In re Southeast Hotel Prop., L.P.*, 99 F.3d 151, 154 (4th Cir.

## III.

■ Section 502(b)(7) of the Bankruptcy Code[8] is the means by which Congress seeks to protect bankrupt estates from large, sometimes exorbitant claims by employees for damages "resulting from the termination of an employment contract."[9] This provision achieves its goal

6. A party may "appeal from a final judgment, order, or decree of a bankruptcy judge to a district court" as of right "by filing a notice of appeal with the [bankruptcy court] clerk within the time allowed by Rule 8002." Rule 8001, Fed. R. Bankr.P. Bankruptcy Rule 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within 10 days from the date of the entry of the judgment, order, or decree appealed from." Rule 8002, Fed. R. Bank. P. 28 U.S.C. § 158 provides that district courts have jurisdiction to review orders of the bankruptcy court and that appeals under this section "shall be taken ... in the time provided by Rule 8002 of the Bankruptcy Rules." 28 U.S.C. § 158(a) and (c)(2).

7. *See Wolf and Harrington v. Dornier Aviation (North America), Inc.*, Civil Action Nos. 03–1274, 03–1275 (E.D.Va. December 6, 2003) (Order).

8. 11 U.S.C. § 502(b)(7) was designated as § 502(b)(8) prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984).

9. Section 502(b)(7) provides as follows:
(b) ... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such

claim... and shall allow such claim in such amount, except to the extent that—
(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—
(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—
(i) the date of the filing of the petition; or
(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus
(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;
Settled precedent makes clear that this provision is intended to "protect the bankruptcy estate, and the claims of general unsecured creditors...." *In re Visiting Nurse Assoc.*, 176 B.R. 748, 751 (Bankr.E.D.Pa.1995) ("Most Courts which have considered this section agree it reflects congressional intent to protect the bankruptcy estate, and the claims of general unsecured creditors, from the exorbitant damages from the acceleration of long term employment contracts."); *see also In re Lavelle*, 1996 WL 226852, at *5, 1996 Bankr.LEXIS 453, at *16–17 (Bankr.E.D.Pa.

by drawing a sharp line between (i) claims for "unpaid compensation due under such contract, without acceleration," *i.e.* compensation already earned as of the termination date, and (ii) claims for amounts that are accelerated or become due by virtue of the termination.[10] While claims that fall into the first category, if allowed, may be recovered in full, § 502(b)(7) caps the second category of claims at an amount equal to one year's compensation under the employment contract.[11] Thus, for example, § 502(b)(7)'s one year cap clearly limits an employee's claim for severance pay, as this is in effect a claim for prospective compensation that is accelerated as a result of the termination.[12] It is equally clear that the one year cap does not apply to employee claims for earned but unpaid compensation or bonuses, or accrued and earned but unused vacation time, as these are claims for "unpaid compensation due ... without acceleration," *i.e.* claims for amounts already earned at the time of termination.[13]

May 2, 1996) ("Code § 502(b)(7) serves a similar purpose by limiting employee damages claims, especially those of officers, owner-managers and other key-executives who had been able to exact favorable long term contracts calling for substantial remuneration."); *In re CPT Corp.,* 1991 WL 255679, at *5, 1991 Bankr.LEXIS 1730, at *15 (Bankr. D.Minn. November 27, 1991) ("These courts conclude that section 502(b)(7) was intended to protect the estate from the burdensome claims of key executive employees who were able to exact high salaries and favorable terms in their employment contracts.").

**10.** 11 U.S.C. § 502(b)(7); *see also* 5 *Collier on Bankruptcy* ¶ 502.03[8][a]; 9C Am.Jur.2d *Bankruptcy* § 2494.

**11.** *See Anthony v. Interform Corp.,* 96 F.3d 692, 695 (3d Cir.1996) (citing *In re Johnson,* 117 B.R. 461, 465 (Bankr.D.Minn.1990)) (finding a terminated employee's claim for damages limited by § 502(b)(7) to "one year's pay plus benefits"); *In re Condor Sys., Inc.,* 296 B.R. 5, 12 (9th Cir. BAP 2003) (same); *In re Malden Mills Indus. Inc.,* 302 B.R. 408 (D.Mass.2003) (finding a terminated employee's damages claim, with the exception of his claim for unpaid vacation wages, limited to one year's compensation).

Thus, a bankruptcy court's determination regarding allowance of a claim requires a three step analysis. First, the court must determine the amount of actual contractual damages. Second, the court must determine the cap—the amount the employee would have earned in the year following his termination or the filing of the petition. Finally, the court must then limit the claimant's recovery of contractual damages to the capped amount. *See In re Malden Mills Indus., Inc.,*

302 B.R. at 411. Of course, the one-year cap becomes irrelevant if the employee's actual damages are less than he would have earned for one year following his termination or the filing of the petition. *See In re Condor Systems, Inc.,* 296 B.R. at 12 (citing *In re Iron-Oak Supply Corp.,* 169 B.R. 414, 419 (Bankr. E.D.Cal.1994)).

**12.** *See In re Prospect Hill Resources, Inc.,* 837 F.2d 453, 455 (11th Cir.1988) ("It also limits claims for future compensation, which conceivably would have been earned had the parties to the agreement performed under the terminated contract."); *In re Cincinnati Cordage and Paper Co.,* 271 B.R. 264, 269 (Bankr. S.D.Ohio 2001) (limiting claim for severance pay); *In re Lavelle Aircraft Co.,* 1996 WL 226852, at *4, 1996 Bankr.LEXIS 453, at *14 ("Section 502(b)(7) is intended to limit claims for future compensation which would have been earned had the parties continued to perform under the terminated employment contract."); *In re CPT Corp.,* 1991 WL 255679, at *4, 1991 Bankr.LEXIS 1730, at *11–12 (limiting claim for severance pay on the grounds that "[i]t was designed to compensate him for the loss he would suffer upon being terminated without cause."); *In re Johnson,* 117 B.R. at 465 ("Essentially, it limits the allowed amount of the sort of employee claims for damages which are calculated on the basis of the future compensation which the claimant would have earned, had the employer not terminated the contract.").

**13.** *See In re Condor Sys.,* 296 B.R. at 13 ("The first category [502(b)(7)(A) ] is in the nature of future damages, while the second [502(b)(7)(B) ] represents back pay."); *In re Malden Mills Indus., Inc.,* 302 B.R. at 413

■ These appeals present the question as to which side of the § 502(b)(7) line appellants' claims fall. More particularly, the question presented is whether appellants' claims for ninety days base salary owing to DANA's failure to provide termination notice are subject to the one year cap, or are instead claims for "unpaid compensation due... without acceleration" and thus not subject to the cap.

The terms of § 502(b)(7) provide a clear answer to this question: appellants' claims for notice compensation are subject to the one year cap. This is so because the notice compensation provided for in the employment contract is prospective compensation paid to appellants on termination. It is compensation which appellants would otherwise have earned in the future had termination not occurred; it is not compensation for services already rendered and thus is not "unpaid compensation due... without acceleration"; to the contrary, it is plainly *accelerated* compensation. *See In re Prospect Hill Resources, Inc.,* 837 F.2d at 455 (applying § 502(b)(7)(A) cap to claims for prospective damages); *In re Lavelle Aircraft Co.,* 1996 WL 226852, at *4, 1996 Bankr.LEXIS 453, at *14 (same); *In re CPT Corp.,* 1991 WL 255679, at *4, 1991 Bankr.LEXIS 1730, at *11 (same); *In re Johnson,* 117 B.R. at 465 (same). To conclude otherwise, would effectively erase the phrase "without acceleration" from the statute and impermissibly redraw the line Congress carefully drew between capped and uncapped contract termination claims. The end result would then be that parties to employment agreements, especially corporate officers and key executives, could structure their agreements to avoid the cap, precisely the result Congress designed § 502(b)(7) to avoid.

While there is no authority in this circuit or elsewhere that is squarely on point, there is ample analogous authority that supports the result reached here. For example, in *Anthony v. Interform Corp.,* 96 F.3d 692, the Third Circuit held that a terminated employee's claim for salary compensation from his former employer's bankruptcy estate, pursuant to a state court judgment, was limited to "one-year's pay plus benefits" by § 502(b)(7). *See Anthony,* 96 F.3d at 693, 698. In *In re Condor Systems, Inc.,* 296 B.R. 5, the Bankruptcy Appellate panel for the Ninth Circuit held that a former chief executive's claims for severance pay and other payments, including letters of credit, were subject to the one year cap set out in § 502(b)(7). *See In re Condor Sys., Inc.,* 296 B.R. at 20. *See also In re Cincinnati Cordage and Paper Co.,* 271 B.R. at 269 (finding that terminated employees' "claims for Severance Benefits are limited by § 502(b)(7)"); *In re Johnson,* 117 B.R. at 468 (finding terminated employee's claim for lost wages limited by § 502(b)(7)).

(allowing claim for unpaid vacation wages in full as "unpaid compensation due"); *In re Lavelle,* 1996 WL 226852, at *5, 1996 Bankr.LEXIS 453, at *15 (finding that employee's claim is not subject to the cap because it is "a form of deferred compensation in recognition of past services rendered and do[es] not in any way relate to services that were provided in the future but are no longer needed"); *In re CPT Corp.,* 1991 WL 255679, at *4, 1991 Bankr.LEXIS 1730, at *11 ("Section 502(b)(7) does not limit a claim for which the employer has received all the consider-ation for which it has bargained, and all that remains to be done is for the employer to fulfill its obligation of payment.").

It is worth noting that the caselaw also makes clear that "compensation" may include more than just salary and wages. *See In re Malden Mills Indus. Inc.,* 302 B.R. 408 at 411 (defining compensation broadly); *In re Condor Sys.,* 296 B.R. at 13 ("[T]he term 'compensation' in § 502(b)(7) is more comprehensive than mere wages, salaries, or commissions and extends to include benefits ....").

Appellants' arguments to avoid the cap are not persuasive. Appellants argue first that the bankruptcy court was misled by the form of the notice compensation, namely ninety days salary, and thus reached the wrong result. In this regard, they argue that had the employment contract provided for liquidated damages in the form of a previously determined lump-sum payment, an automobile, or even a herd of goats, these damages would not be subject to the one year cap. Yet, appellants are mistaken; while not in the form of salary, these liquidated damages would nonetheless be subject to the one year cap because they are, in essence, a form of severance pay. Put differently, these forms of liquidated damages amount to compensation accelerated by the termination.

Equally unpersuasive are appellants' arguments (i) that DANA could have chosen to give appellants notice ninety days prior to termination and thus avoided the need to pay notice compensation and (ii) that DANA had already agreed during settlement negotiations to compensate appellants in full for other prospective damages, including post termination health insurance benefits, tax preparation services, and moving expenses. The first argument is of no assistance to appellants. To be sure, DANA could have made the choice to delay termination for ninety days, in which event, it is also true, appellants would have earned their salary for this period and § 502(b)(7) would not have applied to this earned salary. Yet, this is not what happened; DANA did not make this choice. Instead, DANA made a different choice for which there are different consequences.

DANA chose to pay ninety days salary in lieu of the requisite termination notice and this choice falls squarely on the one year cap side of the § 502(b)(7) line. Appellants' second argument is simply irrelevant. Simply put, private arrangements the parties might reach in settlement of some claims do not bind a court in adjudicating remaining claims.

In sum, appellants' claims for notice compensation are subject to the one-year cap under § 502(b)(7)(A) and are not "unpaid compensation due." [14] Thus, because the bankruptcy court allowed appellants' claims in an amount in excess of appellants' expected compensation for one-year, appellants may not recover additional amounts as notice compensation. Accordingly, after de novo review, the bankruptcy court's decision must be affirmed and this appeal dismissed.

An appropriate order will issue.

14. Thus, because Harrington was terminated in early April 2002, prior to the April 24, 2002 petition filing date, his claim is limited to his expected future compensation under the contract between early April 2002 and early April 2003 plus any unpaid compensation due at the time of his termination. Because Wolf was terminated on June 30, 2002, after the April 24 filing date, his claim is thus limited to his expected future compensation under the contract between April 24, 2002 and April 23, 2003 plus any unpaid compensation due at the time of his termination. *See* 11 U.S.C. § 502(b)(7)(A).